The opinion of the Court was delivered by
Tilghman, C. J.
Frederick Hillegas, the plaintiff below, (who is defendant in error,) claimed the land in dispute under a warrant and survey to Thomas Holt, who conveyed to George Armstrong, who conveyed to William, Henry, who conveyed to the Bank of North America, who conveyed to James Ross, who conveyed to the Plaintiff. On, the trial of the cause, several exceptions were taken to the opinion of the Court on points of evidence, on which exceptions this Court is now to decide.
1. The first exception was to a paper purporting to be the original survey, not returned to the office of the surveyor general, but found among the papers of George Woods, deceased, formerly deputy surveyor of Bedford county, in the hands of Henry Woods one of his executors. It was proved, that the body of the writing, and the indorsement on this paper, were of the hand-writing- of several persons deceased, who had been deputy surveyors or assistants to- the deputy surveyor of Bedford county; and upon this evidence, the Court permitted it to go to the jury. The Court have been very liberal in admitting evidence of this kind ; so much so indeed, that I do not see how, without inconsistency, this paper could have been excluded. It ought, to be sure, after the death of George Woods, to have been delivered by his executors, to his successor in office. But it is very common for deputy surveyors to intermix their private, with their official papers, and it would be unjust that a third person, who was obliged to have his survey made by the officer, should suffer by this kind of negligence. The material point to be ascertained, was, whether the survey was an official act; of that, the jury were to judge. The paper in question was not conclusive evidence of a survey, but I think the preliminary evidence justified the Court in permitting it to be laid before the jury.'
2. The second objection was, to the admission of an exemplification of a deed from William Henry and wife, to the President, Directors, and Company of the Bank of North *318 America, certified by the recorder of deeds for the county of Huntingdon. This deed contained a conveyance of lands, lying in the county of Huntingdon, and also of the lands now in dispute, which lie in the county of -Bedford. Evidence of this kind has been admitted, by the Judges of this Court, at Nisi Prius. and was determined to be. admissible, by the Circuit Court of the United States for the district of Pennsylvania. in the case of' M'Keen v. Delancy's Lessee, which was carried up to the Supreme Court of the United States, and affirmed on a writ of error. 5 Cranch, 22. Indeed I consider this exception as having been abandoned, and very properly, by the plaintiff in error, on the second argument of this cause. The deed was legally recorded in Huntingdon county, because it contained a conveyance of land in that county ; and being legally recorded, its whole contents became legal evidence in every part of the State. But although legal evidence, it does not follow that it would be preferred to a subsequent deed made to a purchaser without notice, for those lands which lie in Bedford county, which should be recorded in Bedford county. That is quite a different question, and I mention it, lest an improper inference should be drawn from the point now decided.
3. The- third exception was, to the admission of the deed from the Bank of North America to James Ross, to which there were two objections, first, that there was no evidence of the seal of the corporation ; and second, that the corporation was incapable of receiving a conveyance of land, otherwise than by mortgage, and therefore had no estate which could be conveyed. The first exception was. good. A corporation is an imaginary being ; a creature of law, which cannot act otherwise than as prescribed by law. Its deeds are authenticated by its common seal, but that seal must be proved. It is not one of those public matters, of which individuals are bound to take notice. I do not mean, that the affixing of the seal must be proved by a witness who was present, and saw it done. But the seal itself, that is the impression, must be proved by some person who knows the device, motto, &c. No evidence of that kind was offered, and therefore the deed ought not to have been read to the jury. In support of this opinion, I refer to the case of Jackson v. Pratt, decided by the. Supreme Court of New York, *319 ÍO Johns. 381, and Peake’s Law of Evidence, 48, note, and 72.
But the great point's in this cause are, the capacity of batik to take the land conveyed by William Henry’s deed, and afterwards to convey the same to James Ross. There is no*1 doubt that a corporation must be governed by the charter, from which it derives its existence. It can do no act nor take any estate contrary to its charter. If therefore It can be shewn, that the Bank of North America, is forbidden by its charter, either to take, or to convey, the land contained in William Henry’s deed, the plaintiff’s action cannot.be supported. By the 3d section of the Act of Incorporation, (17th of March, 1787, '2 S'm. L. 399,) the bank is made capable “ to have, hold, purchasé, receive, possess, enjoy, and retain, lands, rents, tenements, goods, chattels, and effects of whatsoever kind, nature or quality, to .the amount of two millions of dollars and no more, and also to sell, grant, &c. the same lands, &c. Provided nevertheless, that such lands and tenements, which the said corporation are hereby enabled to purchase and hold, shall only extend to such lot and lots of ground, and convenient buildings, and improvements thereon erected or to be erected, which they may find necessary and proper for carrying on the business of the said bank, and shall, actually occupy for that purpose, and'to such lands and tenements which are or may be bona fide mortgaged to them as securities for their debts’’ It is remarkable, that, with regard'to the holding of lands, the charter of this bank is more restricted than that of any other bank in the State, for all the others are enabled to hold, not only the lands which have been bona fide mortgaged to them by way of security for debts, but also those, “ which may be conveyed to them in satisfaction of debts previously contracted in the course of their business, or purchased at sales upon judgments which shall have been obtained for such debts.” This difference of restriction, must have arisen from the extreme jealousy of monied corporations which pervaded the mind of the Legislature when the Bank of North America was incorporated. It never could have been intended to place that, bank on a worse footing than others, for it was the only one, which risked its capital on a field altogether untried in America, and which had the merit of rendering essential service to the *320 United States, during the war of the revolution. It would be improper therefore, to carry the restriction, by construction., farther than the words of the law plainly import. The restriction is, that the bánk shall not purchase and hold, Pur- and holding, are very different things, and -the consequences of each are very different. If the words had been, that the bank should neither purchase nor hold, then it could have done neither one nor the other. But although purchasing and holding, might have been thought dangerous, because of the power which it would have given the bank to bring too much land into mortmain, yet to purchase, subject to the statutes of mortmain, which authorised the Commonwealth to appropriate the land to its own use, could be attended with no danger. This construction would satisfy the jealous policy of the Legislature, preserve the community from the danger of .too great a mass of real property held in mortmain, and at the. same time put it in the power of the Commonwealth to act towards the bank, as justice might seem- to require’. This is a consideration of no small importance; for when the directors of the bank accepted from William Henry, a conveyance of his land at a fair price, in payment of a debt bona fide due, it would be bard to presume, that they knew they were acting in violation of their charter. But granting that the restriction in the charter, did not extend to the simple act of purchasing, it may be asked, whence did the corporation derive the right to purchase, and what would be the situation of land purchased, without a capacity of holding. The answer is, that a corporation, has,from its nature, a right to purchase lands, though the charter contains no licence to that purpose. And in this respect the statutes of mortmain have not altered the law, except in case of superstitious uses. But since those statutes, it is necessary, in order to enable a corporation to retain lands which it has purchased, to have a license for that purpose ; otherwise, in England, the next lord of the fee may enter within a year after the alienation, and if he do' not, then the next immediate lord, from time to time, has half a year to enter, and for default of all the mesne lords, the king takes the land so aliened, for ever. That this is the law appears from the following authorities. 2 Black. Com. 268, 269. Co. lit. 2. 6 Fin. Ab. 265. (G, pi. 2.) id. 266.pi. 8. Jenk. Cent. 270. *321 3 Com. Dig. 399. (F. 10.) id. 401. (F. 15.) 1 Rol. Ab. 513. 1. 35. 10 Co. 30. But in Pennsylvania, where there are no mesne lords, the right would accrue immediately to the Commonwealth. It has been objected however, that according to the report of the Judges of this Court, made on the 14th December, 1808, in pursuance of an Act of Assembly requiring them to make a report of the English statutes which are in force in the Commonwealth, &c., it appears, that all conveyances of land to a corporation, without-licence, are absolutely void. I will consider this objection. The Judges-reported the following statute's of mortmain, “7 Ed. I. (Stat. 2.) 13 Ed. I. ch. 32. 15 Rich. II. ch. 5, and 23 Hen. VIII. ch. 10; which are in part inapplicable to this country, and in part applicable, and in force. They are so far in force, that all conveyances by deed or will, of lands, tenements, or hereditaments, made to a body corporate, are void, unless sanctioned by charter or Act of Assembly. So also are all such conveyances void, made either to an individual', or to any number of-persons associated, but not incorporated, if the’ said conveyances are for uses or purposes of a superstitious nature, and not calculated to promote objects of charity or utility.” I have quoted the words of the report, and it is evident that the Judges could have no intent, nor had they power to make any addition to the statutes, or in any manner to alter them. Now by reference to the statutes, it will appear,that in all of them, except the 23 Hen. VIII. ch. 10; the conveyance is not absolutely void, but the estate passes to the corporation, subject as before mentioned, to the right of the several mesne lords, and in their default, of the king, to enter and hold in fee. But by the statute of 23 Hen. VIII. ch. 10, (which has been determined to extend to superstitious uses only, see 2 Black. Com. 273. 1 Co. Rep. 24,) uses and trusts, made and contrived in favour of religious persons, or any bodies corporate, for more than twenty years, shall be utterly void. Now tfye.meaning of the report of the Judges is, that, according to the statute cited by them, conveyances to superstitious uses,-are absolutely void, and conveyances to corporations, to uses not superstitious, are so far void, that those corporations shall have no capacity to hold the estates for their own benefit, but subject to the right of the Commonwealth, who may appropriate them to its own use at pleasure; in other *322 words, that such conveyances have no validity for the pur» pose of enabling the corporation to hold in mortmain. But to support the plaintiff’s title, it must be shewn that the corporation had power, not only to take by purchase, but to alien. In this respect I consider a corporation in the situation of an alien, who has power to take, but not to hold. That an alien may take by purchase, (though not by descent,) has been settled from the earliest times. It is so laid down in Co. Lit. 2, and I believe has never been questioned. Neither has it been questioned, that the land is subject to forfeiture, and may be seised for the king, after office found. But it has been questioned, what is the right of the alien before office found for the king. Without reference to English cases, which leave the matter in doubt, we have the highest authority in our own country for saying, that until some Act done by the Commonwealth according to its own laws, to vest the estate in itself, it remains in the alien, may convey it to a purchaser, but he can convey no estate which is not defeasible.by the Commonwealth. This principle was asserted by Judge Story, who delivered the opinion of the Supreme Court of the United States, in the case of Fairfax’s Devisee v. Hunter’s Lessee, 7 Cranch, 603 ; and this was the opinion of the Supreme Court of Massachusetts, in the case of Sheafe v. O'Neil, 1 Mass. Rep. 256, cited by Judge Story. It is'reasonable in theory, and can have no ill effect in practice, that he who has a defeasible estate, may convey a defeasible estate. Provided the right of the Commonwealth to defeat the estate granted by the alien remains entire, it is immaterial who holds the land until that right be prosecuted. Supposing then, that the cases of the alien, and the corporation be similar, (and I see not how they can be distinguished,) it follows that the deed, from the Bank of North America to James Ross, conveyed a fee simpie, defeasible by the Commonwealth. The counsel for the plaintiff did indeed contend, that this deed might be considered as a mortgage, though on its face it appears to be an absolute conveyance; But this construction cannot be supported. In order to carry the intent of the grantor into effect, a deed intended to operate as one species of conveyance, may be construed to operate as another, provided it contain words sufficient. But it cannot be construed so as *323 to'destroy the intent of the parties, as would be the case by holding this deed to be a mortgage ; for it was the clear intent of both parties to make an absolute sale, and not a mortgage. When William Henry conveyed the lands mentioned in his deed, it was his intent, that in consideration thereof, the debt due from him to the bank should be extinguished, and the bank agreed to accept the conveyance in satisfaction of the debt. But supposing it to be a mortgage, the debt would be extinguished, and Henry would still remain responsible. I am clearly of opinion therefore, that it was not a mortgage, but an absolute conveyance.
4. The fourth and last exception in this cause was, to the deed from James Ross by John Anderson his attorney, to the plaintiff. The objection was, that the power of attorney was not produced, nor good reason shewn for not producing it. The Court heard evidence on that point, and being of opinion ¿that there was sufficient proof of the existence of the power, and of its loss, suffered its contents to be proved by parol evidence. In matters of this kind, where the Court below goes into a preliminary inquiry before it decides upon the admissibility of written evidence, it must be a very strong case which would induce this Court to decide that there was error. Such a case is not presented .on this record, and therefore without criticising the parol evidence, I will only say, that the fourth exception does not appear to me to be supported.
Upon the whole, I am of opinion, that there was error, in admitting the deed from the Bank of North America to James Ross without proof of the corporate seal, and that there is no other error in the record. The judgment is therefore to be reversed, and a venire facias de novo awarded.
J udgment reversed, and a venire facias de novo awarded.