Gibson, J.
To bring all the questions in the cause distinctly into view, it is necessary to recapitulate the facts out of which they arise; and in this, I shall adopt the arrangement of the judge who tried the cause.
The bank was incorporated by virtue of the general banking Act of the 34th of March, 1814. At the period in question, it was so much embarrassed that the stockholders were thinking of dosing its concerns; and its charter shortly afterwards became forfeited by the provisions of the act of incorporation. The defendant below was the President of the Board of Directors, and w as indebted to the institution on notes drawn by himself, and indorsed by his brother, George Baird, in 16,000 dollars; as the indorser of Samuel Park’s note, in 3,000 dollars; and on a note due by George Baird and himself, in 1,000 dollars; in all, 20,000 dollars. In the beginning of January, 1819, he was appointed to the office of President of the Judicial District, in which the Bank was located; in consequence of which, he resigned the office of President of the Board of Directors, on the 20th of the same month, and in the course of a week afterwards, proposed to the Directors to enter into an arrangement in respect to this debt, which he was anxious to liquidate, the particular terms of which are not known or recollected. This proposal was referred to a committee. On the 5th of February he wrote to the Directors, and proposed to give a mortgage of a steam mill which he owned, to secure the debt, or an absolute conveyance, in payment of it; his object being to obtain a release from personal liability. The committee before appointed, verbally reported in favour of a mortgage, payable at two, four, and six years; and at a meeting of the Directors on the 10th of the same month, at which George Baird, (who had been elected to fill the vacancy occasioned by the resignation of the defendant, and the validity of whose election is disputed,) was present, with seven others, such a mortgage was tendered and accepted; but, as I take it, without discharging the defendant’s personal liability. It bears date of the 6th of February, 1819.
This arrangement proved unsatisfactory to the stockholders, and became a subject, of public clamour; in consequence of which, a special meeting of the Directors was called, on the 19th of July, following, at which George Baird and six others were present. The dissatisfaction of the stockholders and of the public was mentioned ; and the defendant, who was present, expressed a willingness to do whatever might be thought reasonable, and offered to give the property absolutely in payment of the debt, at a valuation to be made by any person whom the Board should appoint; but nothing was concluded on, and the Board adjourned. On the 21st *413 of the same month, the Directors again met, (George Baird not being present) and appointed a Mr. Moore to value the property; but this gentleman declined to act, and two others, Messrs. Murdoch and Reed were appointed in his stead. They, however, also declined, and no valuation was made.
On the 24th and 28th of the same month, (July) there were two other meetings, which have no relation to the transaction out of which the controversy arises, and which are noticed here only to exhibit.the whole chain of facts that occurred down to the time when the arrangement'was concluded. These meetings were called to consider of the propriety of winding up the affairs of the bank; at the last of which, it was resolved to have a meeting of the stockholders on the 20th of September, ensuing; but some of the stockholders, thinking that period too remote, published a call for a meeting on the Sth of that month.
Pending these arrangements for a meeting of' the stockholders, the Directors held the meeting at which the business was transacted, that has become the subject of controversy. Eight Directors, including George Baird, were present. In lieu of the steam mill, and in direct payment of the debt, the defendant proposed to convey other real estate, at a valuation made by himself, amounting to 25,750 dollars; and offered, in case this proposal were not embraced, to waive the stay of execution before allowed to him, and to permit a sale of the steam mill to take place on the mortgage for what it might fetch. The Directors, by a vote of six voices to one, (one of their number having withdrawn before the vote was taken, and George Baird voting in favour of the measure,) resolved to accept of a conveyance in discharge of the debt, and nominated three of their number to be trustees, to whom a conveyance was made the next day but one. The subsequent proceedings are no further material than as they show the continued dissatisfaction of the stockholders whose agents have instituted this suit. -—
The bank was governed by thirteen Directors, five of whom were competent to the business of ordinary discounts, but nothing less than a majority of the whole number constituted a quorum for transacting any other business. At the meeting of the 11th of August, just-spoken of, only seven members, including George Baird, were present, when the vote was taken: so that if he were not a director, ,either de facto or de jure, there was at that moment not a quorum present; and hence a question as to the validity of his appointment, is thought to be material. As has been just said, to constitute a quorum competent to fill vacancies, or transact any other business than that of ordinary discounts, required a majority of the whole number of the directors; and this gentleman was elected at a meeting,at which only five were present: so that, originally, his election was unquestionably invalid. And this brings us to the first question, whether he is to be considered as-an officer defacto, or as an usurper. The Judge who -tried the cause was of opinion. *414 that his election was not merely irregular as to time, place, or notice of it, and therefore voidable; but that it was absolutely void; and that be was an unauthorized agent who could do no act to bind the Bank: in other words that he was an usurper.
In analogy to the distinction between judicial proceedings that are absolutely void for want of jurisdiction and those that are only voidable for irregularity, there is something extremely plausible in this opinion. Still, however, it will be found that the question does not depend on whether the appointment is void, or only voidable, or whether it emanated from an authority which had full power to make it; but whether the officer has come in under co-lour of right, or in open contempt of all right whatever. The King v. Leslie, And. Rep. 163. S.C. 2 Stra. 190. This distinction runs through all the cases. Where an abbot or parson inducted erroneously, and having made a grant or obligation, is afterwards deprived of his benefice, this shall bind; but the deed of one who usurps before installation or induction, or who enters and occupies in the time of vacation without election or presentation, is void. So, if one occupies as abbot of his own head, without installation or induction, his deed shall not bind the house. Win. Officer and Offices, G 4. pl. 1. In the case at bar, the court put the matter on the ground, that five directors did not constitute a board for any other business than that of ordinary discounts; and that, having no right to go into an election at all, their act could not give co-lour of right. But in Harris v. Jays, Cro. Eliz. 699. it was conceded, that the Queen’s Auditor and Surveyor had not the right to appoint the Steward for the manor in question; yet it was resolved, that a Steward appointed by him was an officer de facto, and that his acts were good. This is exactly in point. The inquiry then is, was there the colour of an election in Mr. Baird’s case ? He was elected by the very body in which the right to elect was vested, the only thing wanting to the perfect validity of the act, being the presence of two more electors. But the presence of these would not have changed the Board to another, and a distinct body; it would still have been the President and Directors of the Bank of Washington. It is impossible, therefore, to say that Mr. Baird usurped the office without the semblance of right.
This principle of colourable election holds not only in regard to the right of electing, but also of being elected.' A person indisputably ineligible, may be an officer de facto, by colour of election. Knight v. The Corporation of Wells, Lutw. 508. So, even where the office was not vacant, but there was an existing officer de jure at the time. O’Brien v. Knivan, Cro. Car. 552. Harris v. Jays, Cro. Eliz. 699.
Although it was not doubted by the Judge who tried the cause that at least some acts of an officer de facto are valid, it seems to have been considered that this holds only in respect to the acts of public officers, and not of bank directors, who were viewed as *415 the mere agents of the corporation. How are bank directors constituted ? They are elected by the stockholders, from whom their authority proceeds, and to whom, at stated periods, it returns. Between them and the corporation, the relation of principal and agent, with all its incidents, no doubt exists in all its force; but there is also no doubt that they are officers of the corporation. The Cashier, who is indisputably an. officer, is subordinate to the Directors ; and the President, who is also an officer, is nothing more than the presiding Director. As to the position, that the acts of none but & public officer defacto are valid, it is sufficient to say, .that all the authorities are at variance with it; most of the cases in which a question about the validity of the acts of an officer defacto has arisen, being those of corporations, as may be seen by turning to the cases already cited. I take it then, Mr. Baird was an officer de facto, and,that his acts are valid, at least as between the bank and a third party; because, as it is said in the books, the law favours the acts of one in reputed authority. Here, the reasons for favouring the acts of the officer are peculiarly strong, as he was permitted to mingle in the business of the Board at meetings which were numerously enough attended to have- elected him legally, had there been a doubt of the validity of his title to the office. And the reason is still stronger, where, to declare the acts of the officer invalid would prejudice the contract of the third party, than where the question is between an officer and the corporation; as in The King v. Lisle, in which it was resolved, that an election held by the burgesses and a mayor, who was an usurper, was void; and that it wouldffiave been so even if he had been mayor de facto, the act of electing a burgess not being necessary to the preservation of the corporation. This idea of the act being essential to the existence of the corporation, seems to have been entertained as applicable to the cause before us. It is, however, clearly not so; the act of an officer de facto being good, wherever it concerns a third person," who had a previous right to it, or had paid a valuable consideration for it; and this, whether it concerns the preservation of the corporation or not. This distinction is taken in The King v. Lisle, and followed in Riddle v. The County of Bedford, 7 Serg. & Rawle, 392.
But Mr. Baird? s right to sit and vote, in regard to this transaction, is contested on the ground of his having had a direct interest in the very matter in hand. The jury was instructed, that a bank director has no right to vote in a matter in which his interest is concerned; and that he cannot, by his vote, give rights to himself, or take them from the bank. As between the bank and the director himself this is obviously true; and whatever liability there was on the part of George Baird, remained unaffected by this transaction. But the rights of third persons, who contract bona fide with the directors, are governed by very different considerations. Such persons have nothing to do with the dealings of the *416 bank with its agents; they have only to see that the latter are acting within the scope of their authority. It is a principle of law, and of universal justice, that where a loss must fall on one of two or more innocent persons, it shall fall on him whose act was the immediate cause of it. Now who places the directors in office, and holds them forth as persons having capacity to contract for the bank ? And who trusts to their faithfulness towards their employers ? Certainly not he who deals with them in his own behalf. The stockholders must, therefore, bear whatever loss may happen from want of capacity or integrity in their servants. The only exception to this is, where the contract has been procured by collusion with the directors, or some of them: that would of itself avoid the transaction, without aid from a particular interest in the directors, which could have no operation further than as it might serve to disclose a motive for corruption. But of this hereafter.
At the commencement of the business there was a legal quorum present, without counting Mr. Baird, hut one of the directors withdrew before the vote was taken ; and it might therefore admit of a doubt whether the act were not good, independent of Mr. Baird’s agency in it, on the ground of its having been begun when the corporate body was complete, and competent to act. This, however, woüld depend on the authority of The King v. Norris, Barnard, 392., which has been much shaken by later decisions. I shall, therefore, rest this part of my opinion on the reasons already given, supported as they are by the authorities cited, which I take to be much surer ground; and shall proceed to the remaining point.
The power of the directors to take real estate in payment of this debt, was denied. By the act of incorporation, the bank had a right to hold “such lands as wore bona fide mortgaged, or conveyed to it in satisfaction of debts previously contracted in the course of its dealings.” The court was of opinion, that this gave the directors no general authority to commute debts for real estate; but only an authority specially limited to those cases where the taking of real estate might be thought necessary to the security of the debt; consequently, that their act in this case would be found lo be within the scope of their authority, or otherwise, just as it should be determined to have been an act of prudence, or of indiscretion and extravagance. The jury was also directed that fraud and collusion by the defendant, which, however, was said to be out of the question, would avoid the transaction; but it was truly stated, that this was a matter which would rest on other and distinct grounds, as fraud and collusion would have that effect, independently of any construction of the clause in question. In conclusion, the inquiry of the jury was uarrowed to a single question: “Was the taking of the deed'-necessary, and was the contract entered into for the bona fide purpose of securing a debt really thought to be in danger?”
*417 This construction depends for support on the use of the words bona fide in the clause in which the question arises. The property must be bona fide conveyed in payment of a debt previously contracted in the ordinary course of the business of the bank; and hence it may have been inferred, that if the transaction were not bona fide on the part of the directors, as respects the bank, although the debt may have been previously contracted in the usual course, the bank could not hold; and that, the whole transaction being void, the parties would be remitted to their former rights. My construction is altogether different. What was the object of the restriction ? Not, as seems to have been supposed, to prevent the bank from turning its capital into unavailing funds: that was a matter which was intended to be left to its discretion, it being competent, at least in contemplation of law, to manage its own affairs in its own way. The object was to prevent, what, from the number of corporations daily springing into existence, is becoming a serious and increasing mischief, the holding of an inordinate proportion of the aggregate real estate within the commonwealth, in mortmain; not to protect the corporation against the folly or dishonesty of its servants, but to protect the community against the corporation. The words bona fide were introduced to prevent the bank from indirectly getting real estate into its hands, ostensibly, in payment of a debt, but in truth and in fact, by a transaction which, in its origin, was a purchase. The intention was to restrict the right to cases where the loan should be real, and not merely colourable ; but I cannot think it was intended to narrow it further, or it would have been so expressed. It is not pretended that the loan was not a real transaction here. As respects the arrangement in question then, the directors had a general authority to act according to the best of their judgment for the benefit of the bank; and if 'they have not acted with discretion, or even good faith in the exercise of it, who is to be answerable ? Surely not he who has acted with good faith throughout — who reposed no confidence in their judgment, and whose business it was not to watch over and protect the interests of the bank. The directors stood in the relation of agents, acting under a general authority, who alone are responsible for an abuse of it. If they transcend their powers the act is void, and the principal is not bound; but, whether they act providently or otherwise, is a matter with which the person with whom they contract has'nothing to do; they represent their principal, and are of sufficient discretion to contract for him. No man in his senses would contract with a bank on any other terms. He might lose, but could never gain, if the bank should be bound or not, as the bargain might be thought by a jury to be a good or a bad one; and to this alternative it never was the design of the Legislature to subject any one. There maybe cases where the mismanagement in an agent may be so gross as to be evidence of collusion *418 with the party who deals with him; but that, as I have said, would furnish an objection on other and distinct grounds.
But even if the bank had no right to hold the property under the deed of trust, I am far from thinking that the acquittance of the debt would be void, and the parties remitted to their original rights. In Leazure v. Hillegas, 7 Serg. & Rawle, 313, it was determined, that the Bank of North America might take, independently of a provision in the Act of its incorporation similar to the clause in question; and that the title of the corporation, like that of an alien, would be defeasible only by the state. Then, if there had even been a forfeiture in the case before us, as the conveyance passed the title, which could in no event revest in the defendant, it would be a severe construction that should subject him to the loss of his estate, and yet suffer the debt to remain. Chancery will not permit a person to rescind while he retains the title, even though it had been defeasible in the hands of the vendor; much less where it has become so by the personal disqualification of the vendee. But here a re-conveyance of the title, with its defeasible qualities adhering to it, as they must necessarily do if they exist, would not help the case. Could an alien have a bill to rescind on the ground that be is disqualified from holding ? He .would unquestionably be suffered to take for the benefit of the state. Here, taking the title to be in the bank, and that it is defective, (neither of which is so in fact) still, no one can take advantage of the defect but the state; and non constat that she ever will. But that the bank became the owner of a defective title, if defective it were, arose from the acts of her own agents, and not of the defendant, who can in no shape be made answerable for their conduct, if he has acted fairly himself.
But the fact is, the title never was conveyed to the bank, but to trustees, on a very special trust, to sell the estate, and pay this debt with the proceeds. I at once concede, that a conveyance in trust to permit a corporation, which cannot accept of the legal title, to receive the rents and profits, or that in any shape entitles such corporation to be put into possession, would be as much a violation of the law, as a direct conveyance of the legal title. But, without meaning to speak with great confidence, I apprehend that a conveyance made with a view not to permanent ownership by the corporation, but with the view of raising money by a sale of the property, would be within neither the letter nor the spirit of the act.-
The only ground then on which this whole transaction could be declared a nullity, would be that of fraud in the defendant; that is, such a fraud on the directors as would avoid any other contract between individuals treating-for themselves; or collusion with the directors,' to sacrifice the interests of the bank to those of the defendant. But, neither a disposition on the part of the directors to favour the defendant, on the one hand; nor an effort on his part to *419 obtain the best terms possible, on the other; would separately constitute this latter species of fraud. It would require an acting in eoneert, under either an express or a tacit understanding, that in making the arrangement, the interests of the bank should give .place to those of the defendant. If the bank can make out to the satisfaction of a jury that the defendant and the directors conspired together to bring about this arrangement, knowing it to be disadvantageous to the bank, there ought to be a verdict for the plaintiff; otherwise, for the defendant.
Judgment reversed, and a venire facias de novo awarded.
Tilghman, C. J. gave no opinion, having been prevented by sickness from heariug the argument. x