Nelson, Ch. J.
The defendant was appointed by the com mon council of the city of Brooklyn, clerk of the board for the year ending the first day of May 1843, and until another should .be appointed in his place. (Sess. L. of ’34, p. 94, 117, §§ 14, 76.) The principal' question in the case is, whether the relator has been appointed for the! ensuing year. If not, then the de- ■ fendant holds over, and is entitled to retain the custody of the books and récords of the office.
The relator was undoubtedly appointed at the first meeting , of the new board in May 1843, if John A. Cross is to be regarded as having been elected,one of the aldermen for the seventh ward at the previous annual election in April. Without the vote of Albert H. Osborn, who claimed to hold over as one of the old aldermen of that ward on the ground of a failure to elect one in his place, the relator had the majority of votes, and was duly appointed to the. office.
. Was John A. .Cross then legally elected one of the aldermen of the ward.in April. 1843? For if he was, his election and subsequent qualification effectually displaced Osborn on the first pf May, after which he had no more right to a seat in the new *621 board than any other stranger who might obtrude himself upon its notice and claim to participate in its proceedings.
In order to determine this point we must recur to the result of the election as declared and published by the board of city canvassers. For I admit that, on a proceeding by mandamus ' involving a dispute as to which of two persons has been elected to an office, and indeed in every other proceeding involving the like enquiry, except quo warranto, the regular determination of the board of canvassers is to be déemed conclusive upon the parties. The original merits, by which I mean the- question arising upon a canvass of the votes, cannot be thus reviewed; but the result as finally certified and declared by the board is controlling. (The People ex rel. Van Voast v. Van Slyck, 4 Cowen, 297; The People ex rel. Yates v. Ferguson, 8 id. 102; The People ex rel. Platner v. Jones, 17 Wend. 81; The People ex rel. Benton v. Vail, 20 id. 12; Ex parte Heath, 3 Hill, 43, 47, 8.)
Under the act of 1842 (Sess. Laws of 42, p. 109,113) the seventh ward of the city of Brooklyn was divided into two election, districts, called the first and second, in each of which three inspectors of election are chosen. By the charter of the city these in-spectors are required, immediately after the election, or on the next day, to canvass the votes “ in the same manner and under the regulations prescribed by the revised statutes as to general elections ;” and on the day of completing the canvass, or the next day, they aré to deliver the statements, of the results to the clerk of the common council, who- is to file the same forthwith. (Sess. Laws of ’34, p. 94, § 12.) The charter then provides that the common council shall form the board of city canvassers, and shall, as soon as conveniently may be, and within eight days after the statements of the inspectors are received and filed, de- . .clare and publish the result of the election. (Id.)
- The returns of the inspectors in this case were made and filed on the next day after the election, and they showed that John A. Gross received in the two districts composing the ward, 447 votes; viz.- in the first district 201 votes, and in the second 246 votes. Theyiurther showed that Zebulon Chadbourne received *622 ill the first district 272 votes, and in the . second 173 votes; making in all 445. According to the returns of the . inspectors, .therefore, it is plain that Cross was elected alderpian of the ward by two majority.
After these returns were thus made out and filed. with the clerk in pursuance of the charter, but how long after .does not appear, two of the inspectors of the first district again met and made out a supplementary statement, in which they .set forth that six of the 201 votes counted for John A. Cross, were in the following, form: “ For Alderman—J Cross.” This supplementary statement, it is said, must be taken as a part of the return previously made and filed on the day succeeding the election. The revised statutes, however, referred to in the chapter of the city as regulating the duties and powers of the ,inspectors, provide, that after their returns shall be made out, signed and filed, “ the poll lists and ballots, excepting such ballots, as shall have been rejected by the inspectors as imperfect, shall then be destroyed, and the board of inspectors shall be dissolved.” (1 R. S. 138, § 50, 1.) The act of 1842 authorizes the several boards of county canvassers to have certain formal and clerical errors in the returns corrected, but guards expressly .against a phange or alteration of any decision before made by them. (Sess.. Laws of 42, p. 125, § 15.)
There can be no doubt, therefore, that this supplementary statement of the two inspectors was an unauthorized and very unwarrantable attempt to interfere with and change the legal pffect of the official return previously filed: and it is entitled to, no more consideration than if made by any other two respectable citizens of the ward. It must be regarded as if expunged from the proceedings, or rather as if it had never been annexed to them.
If the above view of the returns of the inspectors be correct, and I confess it appears to me too plain to admit of doubt or. Controversy, we have then a simple and direct statement on their part that John A. Cross received 201 votes in the first district, and Zebulon Chadbourne 272 votes; and these,, when added.to *623 the Votes given in the second district, clearly establish the election of Cross.
Let us now advert to the proceedings of the board of city canvassers. According to the charter of the city, as we have seen; they are required, as soon as conveniently may be, and within eight days after the statements of the inspectors shall be received and filed, to declare and publish the result of the election. What result? Obviously, the result as derived from the returns legally made and filed in pursuance of the statute. The city canvassers are to ascertain it from the facts thus made known to them, and to declare and publish it accordingly.
Following out the statute, the city canvassers have declared that, according to the statements delivered to and filed with the clerk, John A. Cross received for alderman in the first district 201 votes, and Zebulon Chadbourne 272 votes; and that, in the second district the former received 273 votes, and the latter 173. This shows a majority in favor of Cross. But on the facts embraced in the supplementary statement made by the two inspectors of the first district, the city canvassers have sought to change the result as derived from the official return previously filed, saying they could not satisfactorily determine that either of the two candidates was elected; and they have, therefore, declared that neither was elected.
Now the obvious answer to the matter thus put forth to qualfy the clear result of the election is, that it has no foundation in the official statements or returns of the inspectors—the only legitimate source whence the result can be ascertained. On the contrary, it has been derived confessedly from the spurious amendment before referred to—an unauthorized interpolation in the official return, which the city canvassers should have wholly disregarded, and which this court is bound to disregard and treat as surplusage. This was so held in Ex parte Heath and others, (3 Hill, 42.) Mr. Justice Cowen there said : “ To declare who was elected, the ward inspectors were doubtless competent. Have they done so substantially ? If they have shown an election on the whole return, that gives the right. In the words of Lord Coke ‘the election is the foundation; not the return.’ *624 They have, in the words of the statute, set d'oivn the names of the candidates for the respective offices, with .the number of votes for each ; and it is admitted -that if they have done nothing more, this was, in legal effect, the same as an express declaration of the majority.” He further remarked: “We are of opinion that the declaration of impossibility was a nullity. So far as the certificate can be regarded, as official as within their competency, a complete election of the assessors was made out. in fact, with sufficient certainty. Id cerium est. quod certum reddi potest. They th'én had no legal power under the statute to set up the impossibility of declaring, the true majority. The case was the same as if they had first certified, in so many Words, an election, according to all the words of the statute, and. had then added the qualifying phraseology. -The latter must obviously have been rejected as surplusage.”
in the case above referred to, the ward canvassers, after stating accurately the returns as' made from three of the districts, which showed upon their face that the relators were elected,'.re-' ferred to the dispersed state of the ballots in the first district, and upon this circumstance predicated a declaration of the impossibility of determining what persons were elected. The court held that enough appeared' in the certificate of the canvassers to show the result with requisite certainty, and that the' declaration of impossibility, together with the statement upon which it was founded, were extra-official and should be disre- ' garded. In the present case, the city canvassers refer to the fabricated amendment of the two inspectors, and upon the facts therein stated declare' that no other person was elected in. the ward save Bouton, There is not a conceivable difference, between the two cases. • - It is true, here the board declared in express terms that- there was no election of either candidate; whereas, in Ex parte Heath and others, the conclusion followed as an inference -from, the alleged -impossibility of determining who was elected. The ■ result was not less emphatically declared in that case than it is in this ; for the implication of. no' election in the one instance, is as clear as the declaration of it in the other. Unless therefore we are to be governed by words *625 and phrases, instead of the sense and substance of the matter, the case referred to is entirely decisive of the present.
It was said on the argument that, even rejecting the supplementary statement of the two inspectors, the allowance of the votes to Zebulon Chadbourne which were returned in the second district as having been given for “ Chadbourne” and “ Shaborn,” would still leave a tie between him and Cross. The answer is, the city canvassers have not allowed them, but the contrary. Nor had they any power to allow or use them by way of embarrassing the result. According to the case of The People, ex rel. Yates, v. Ferguson, (8 Cowen, 102,) which has gone the farthest on this subject, these votes could not be allowed even in a proceeding by quo warranto, unless it appeared affirmatively that they were an abbreviation of the proper name of the candidate, which, I apprehend, it would be difficult to establish. Be that as it may, however, the canvassers might just as well have embarrassed the result by using the vote given for “ J. Stagers,” which also appeared in the return, as by using the votes in question.
It was also urged that Cross, even if elected by a majority of votes, was not to be regarded as an alderman in possession of the office until admitted by the .mayor. This is a mistake. The mayor had nothing to do in the matter; nor had he any power, legal or moral, to exclude Cross when duly qualified. A refusal after that to permit him to act in the discharge of his duties, would have amounted to nothing more nor less than a simple deed of violence, which might as well have been committed against any other member of the board. When a person has been elected to an office, he is admitted to the full possession and enjoyment of it by taking the requisite oath, provided no other condition is prescribed; this being what is called in the books, taking legal possession. (Rex v. Ellis, 9 East, 252, note; Rex v. Dublin, 1 Strange, 538; Rex v. Bosworth, id. 113; Wilc. On Corp. 125, § 575.)
Cross then having been duly elected and qualified, was in full possession of the office at the time of the, first meeting of the board in May, which necessarily had the effect of displac *626 ing Osborn, unless we are prepared to say that an alderman once elected in Brooklyn may continue to exercise his functions until ousted by due process of law. Without stopping to combat so absurd a position, it is sufficient to refer to the charter1 itself which limits the tenure of the office to one year, and until another incumbent is elected and has taken the oath of office. (Sess. Laws of '34, p. 94, 117, §§ 14, 76.) It follows, there-1 fore, that Osborn’s vote on the choice of clerk was a mere nullity, and that as the relator was legally elected and has taken the requisite oath, he is in possession of the office and entitled to the books and records. These having been withheld, he has resorted to the appropriate remedy to obtain the possession of them. (Ang. & Ames On Corp. 441, and the cases there cited; Wilc. On Corp. 395, § 157; Bac. Ab. tit. Mandamus, (C).)
It has been urged that the statute allowing the successor in office to apply to a judge at chambers to enforce the delivery of the books and papers, has stiperseded the remedy by mandamus. (1 R. S. 124, §§ 50 to 55.) I think otherwise. There is nothing in the provisions of the statute indicating that such was the intent of the legislature. It was obviously designed' simply to furnish a prompt and summary remedy for cases of emergency, in addition to the one already existing by mandamus^ The latter was a well known remedy before, and if the legislatúre had intended to supersede it, some indication of that intent would have been found in the statute. The remedy in the one case is a proceeding according to the principles of the common law, where questions of fact may be determined by a jury, and those of law by the court, subject to review on error; while in the other, the remedy is by an informal application to a judge at chambers, who is to proceed summarily, and whose determination upon the matter is final.
In conclusion I will add, that it is the duty of courts to restrain the doings of canvassers of election strictly within the limits of the authority under which they act. It requires nó great forecast to see that if they are allowed to pass this boundary, and to vary the result by the introduction of extraneous matters, the success of a candidate will not depend so much *627 upon the number of votes received, as upon the ingenuity and skill of the canvass. Every departure from the course prescribed by the statute in regard to the returns, should be sedulously watched and promptly condemned. It is no answer to say that the aggrieved party hqs a remedy by quo warranto, by which he can go behind the returns and expose and correct the error. He is not the only person wronged. The electors, nay the whole community have a deep interest in the question. Besides, the tenure of office under our institutions is in most cases so short that it must frequently expire before the termination of the contest.
I do not intend to intimate that the returning officers in this case have heen actuated by any other motives than an honest desire to do their duty; but I feel bound to say that they have mistaken the law and allowed themselves to be influenced by matters lying clearly beyond the line of their authority. My opinion is that a peremptory mandamus should issue.
Bronson, J.
This is professedly a proceeding to put the relator in possession of the books and papers belonging to the office of clerk of the city of Brooklyn. It is in fact a proceeding to try the title to the office, both parties claiming it, and the defendant being in possession. The right to the books and papers is altogether subordinate to the main question, neither party claiming possession save on the ground that he is clerk.
The defendant was appointed clerk in May 1842 for the term of one year, and until another should be appointed in his place. (City Charter, Sess. Laws of 1834, p. 94, § 14.) His title to the office is clear, unless some one has been appointed to succeed him. The relator insists that he was appointed clerk in May last, and whether that be so or not is a question which involves, besides other things, the title to a distinct office, to wit, that of alderman of the seventh ward.
The relator makes out his title in this way. At a meeting of the common council in May last, an election for clerk was held, when eighteen votes were given, nine of which were for the relator, and nine for the defendant; and as the candidates *628 had an equal niunber of votes, it was declared that no election had been made. But the relator insists that he was elected, and for the purpose of maintaining that position he alleges that Osborne, one of the eighteen persons who voted, was not in fact an alderman, and therefore had no right to vote. He further alleges that Osborne was one of the nine persons who voted for the defendant, and if that vote was void, then the defendant had but eight legal votes, and so the relator was elected clerk.
Osborne was elected alderman of the seventh ward in the spring of 1842 for one year, and until another should be chosen in his place. (Id. § 14.) He insists that no one was chosen in his place at the last charter election, and on that ground he went into the new common council, and voted with the seventeen aldermen whose titles are not disputed when the attempt was made to appoint a clerk. The relator insists that Osborne had been ousted in one of two ways. 1. At the last charier election, Bouton, one of the two aldermen of the seventh ward for the preceding year, was re-elected alderman of the ward; and this, it is said, superseded Osborne just as effectually as though two aldermen had been elected. 2. The relator insists that Cross, as well as Bouton, was in fact chosen alderman at the last charter election, and so Osborne was superseded. On the question whether Cross was elected, the parties are at issue. But in the view which I shall take of the case it will not be necessary to go into that question, nor to inquire whether Osborne had been legally superseded in any other way.
Enough has been stated to show, that the relator proposes, upon this writ of mandamus for the delivery of papers, to try the title to the office of clerk; and in doing so he must necessarily try the title of Osborne to the office of alderman.
The relator has several difficulties to encounter which I think insuperable. And in the first place, the defendant is actually in the office of clerk under color of lawful right to hold it. A writ of mandamus is not the proper mode of trying the title. The relator should have proceeded by an information in the nature of a quo warranto. (The People v. Corporation of N. Y., 3 John. Cas. 79; Rex v. Bankes, 3 Burr. 1452, 1 W. Black. 445, 452, *629 S. C.; The King v. Mayor of Colchester, 2 T. R. 259; Angel & Ames On Corp. 565, 2d ed.) In The King v. Corporation of Bedford, (6 East, 356,) a mandamus was granted; but it was for the reason that a qua warranto would not lie in that particular case, and there was no other adequate remedy. The relator should first establish his title to the office by a direct proceeding for that purpose, and then his right to the books and papers would follow as a matter of course.
If the relator is in truth clerk, he has a direct, specific and more expeditious legal remedy for reaching the books and papers than we can give him by mandamus. He may apply to a judge, and be put in possession without delay. (1 R. S. 124, §§ 50, 56, and 2 id. 582, §§ 32, 33.) Where the party has another specific legal remedy, a mandamus will not be granted. This has been decided a hundred times, and the rule is so well settled that it would be a waste of time and paper to cite the books. Many of the cases are collected in Angel & Ames On Corp. 577, 8, 2d ed. The relator relies very confidently on Smith v. Dyer, (1 Call, 562,) and Dew v. The Judges &c., (3 Hen. & Munf. 1;) but it did not appear in either of those cases that the relator had any other adequate legal remedy.
If the relator wishes to try the right to the office, it must be done by quo warranto. If his title is clear, then he has a complete remedy by applying to a judge for an order to deliver the books and papers. And so in either way of putting the matter, the remedy is not by mandamus.
We are referred to Ex parte Heath, (3 Hill, 42,) as deciding this question for the relator. That case decides that a person showing a prima facie right to an office is entitled to have the proper oath of office administered to him, to the end that he may be in a condition to assert his legal rights. That is a very different thing from putting him in possession of the office, especially where it is already filled by another. And besides, the question whether a mandamus was the proper remedy was not made in that case.
If this was the proper form of trying the question, the relator could not succeed. The very first step in his case is an attack *630 upon the title of Oshorne to the office of alderman. Now, admitting that the title of Osborne could be successftdly assailed in a direct legal proceeding against him, it cannot be overturned in this collateral way. He. was actually in the office of alderman by color of right, to say the least, and his vote was given and received on the election for clerk. If he was not an officer de jure, he was one defacto, and the vote was therefore not a nullity. No principle is better settled than that the acts of an officer de facto are valid when they concern the public, or third persons who have an interest in the thing done. (Knight v. The Corporation of Well, Lutw. 508, 519; The People v. Collins, 7 John. 549; McInstry v. Tanner, 9 id. 135; Wilcox v. Smith, 5 Wend. 231; People v. Bartlett, 6 id. 422; People v. White, 24 id, 525; People v. Covert, 1 Hill, 674; Bucknam v. Ruggles, 15 Mass. R. 180; Baird v. Bank of Washington, 11 Serg. & Rawle, 411; Cocke v. Halsey, 16 Peters, 85; And see Trustees of Vernon v. Hills, 6 Cowen, 23; Angel & Ames On Corp. 224—227, 2d ed.) Osborne was not a mere usurper of the office, without any color of right. (The King v. Lisle, Andr. 163; 2 Str. 1090, S. C.) The board of city canvassers had determined that Bouton was re-elected alderman of the seventh ward, and “ that- no other person is elected in said ward to that office except the said Samuel Bouton.” Now if it be granted that the board was wrong in drawing that conclusion from the facts of the case, still as it was the decision of a competent body to pass upon the question, and as it had not been reversed, nor in any way overruled, third persons might well act upon it. If the determination was not conclusive, so long as it remained unquestioned by any legal proceeding by way of review, it was at the least sufficient to give color of right to third persons acting under it. And then the question was, whether the re-election of Bouton, without electing a second alderman, ousted Osborne, so that he could not hold over until another should be actually chosen in his place. That was a grave question of law. (See The People v. Jones, 17 Wend. 81; Matter of Union Ins. Comp., 22 Wend. 591.) Those were not, as this is, cases of *631 the re-election of a part of the old incumbents; and if Osborne and those who acted with him in the common council were mistaken in saying' that he was not ousted, still he was not without a show of right in holding over. Having this color of title, he went into the common council and voted on the balloting for a clerk, and if it be conceded that he was not alderman de jure, still his vote was not an absolute nullity. If that vote had turned the election in favor of the defendant, there can be little doubt that he would be entitled to hold the office of clerk, although Osborne himself should afterwards be ousted by quo warranto. The peace and good order of society absolutely requite that the acts of an officer de facto should be held Valid so far as third persons are concerned. As to these parties the vote of Osborne was valid, arid it follows that the relator was not elected clerk. And as no person has been appointed in the defendant’s place, he is legally entitled to hold the office by virtue of his appointment in 1842.
On each and all of the three grounds which have been mentioned, I am of opinion that the defendant is entitled to judgment on the demurrer.
Cowen, J., without passing upon the other questions in the cause, concurred in giving judgment for the defendant, on the ground that the relator, if he is clerk, has another specific legal remedy for obtaining the books and papers.
Judgment for defendant(a)

 After the above decision, an application was made on behalf of Hodgkinson to Kent, C. Judge, under the statute authorizing “ proceedings to compel the de. livery of books and papers by public officers to their successors.” (1 R. S. 124, 5.) Having heard the arguments of counsel for the respective parties, the judge held that the case was not one falling within the summary jurisdiction conferred by the statute, and he therefore declined to interfere. In announcing this determination he delivered an able opinion, showing, among other things, that notwithstanding die decision of the supreme court, there remained a series of complicated and highly important questions which must be passed upon before the right of Hodgkinson could be recognized. As to the effect to be given to the declaration of die board of city canvassers the judge observed;
*632 “It is contended by the applicant that the declaration of the canvassers not only does not conclude Cross from asserting his title to the office of alderman, but that it is conclusive in his favor; because, while it pronounces a decision that neither Cross nor Chadboume was elected, it gives the number of votes for each, shdwing, as is alleged, a majority of two in favor of the former. The applicant insists that the decision is a nullity, since the materials for it lead to an opposite conclusion. To admit this argument 1 must assume that the statement of the two inspectors mentioned in the declaration of the canvassers, was unofficial, illegal and void. Can I properly draw such a conclusion from the declaration itself, without resorting to evidence aliunde ? Where on the face of the declaration does it appear that the statement in question was made out of time, or after the board of inspectors was dissolved, or that it was not the legal act of the inspectors 7 The chief justice, in his opinion, does indeed condemn it; but he does so by resorting to evidence extra the declaration. Mr. Justice Bronson, however, with the evidence before him, considers the declaration as ‘the decision of a competent body to pass upon the question;’ and he adds, that inasmuch ‘ as it had not been reversed or in any way overruled, third persons might well act upon it.’ Mr. Justice Cowen gave no opinion, though he coincided with Mr. Justice Bronson in denying the mandamus. If then the supreme court are thus divided in opinion on this very point, is a circuit judge, on an informal and summary proceeding like the present, justified in considering the declaration of the board of canvassers as clearly indicative of a result which is in direct opposition to the one they have specifically declared ?”
The judge then stated various other questions necessarily arising in the case, the mere enumeration of which, he said, was sufficient to show that the title of JHodgkinson to the office of clerk was far from being either undisputed or indisputable; and he then proceeded to consider the nature of the powers designed to be conferred by the statute under which his interposition was sought. The following are his remarks on that subject:
“ The ancient and appropriate proceeding to try and determine the right and title to all offices and franchises, was under the writ of quo warranto ; and where a legal question was involved, this was the only mode of determining it. The applicant first established his title to the office, and then possession of the books and papers was enforced as a matter of course. By the revised statutes regulating in-formations in the nature of a quo warranto, this old remedy is preserved not only, but rendered more expeditious and manageable ; and it is declared to be especially applicable ‘ when any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military.’ (2 R. S. 581, 2, § 28, subd. 1.) Provision is made for the determination of issues of law and of fact; and the right of trial by jury, so vital to the due decision of the latter, is expressly maintained and declared. This then is emphatically the constitutional proceeding for the trial of title to offices.
“ In an act of the legislature for the maintenance and protection of the Erie and Champlain canals, passed in 1820, a section was inserted providing that if any agent, toll-collector or lock-keeper should be discharged from his employment, and should not deliver up the possession of the house or office he occupied as such officer, together with all books and papers belonging to the canals, within seven *633 days, any justice of the peace might order a constable to enter said house or office, remove the persons found therein, and take possession of the books and papers. (Sess. Laws of 1820, p. 187.) On the revision of the statutes, the revisers considered the principle of this provision a salutary one, and, as they remarked, saw no reason why 1 a short, summary and effectual remedy should not be given where a person wilfully withholds public papers’ in other cases. They accordingly reported the provisions contained in 1 R. S. 124, 5, and upon which the proceed, ings now before me are founded. These provisions áre not less ‘ short and summary’ them those conferring power on justices over toll-pollectors &c., but are less comprehensive, as no authority is conferred for obtaining possession of any building or office ; the whole remedy being confined to books and papers alone. They do not provide for a trial by jury. The 1 course of the common law,’ in conformity with which the constitution directs that all new courts must proceed, is assuredly not preserved, if a single judge may, without a jury and without any of the modes or machinery by which legal questions are examined or titles decided, proceed in this short and summary manner to determine the right to an office.
“ ¡Under what circumstances a judge is authorized to interfere in this informal way, is not clearly defined. It was contended before me, in an able argument, on an application similar to the present, growing out of the dispute in the sixth ward of the city of New-York, (see 3 Hill, 42,) that the judge could never rightfully proceed against an officer defacto; that is, one holding or exercising the office under color of claim or title. In that case, however, I deemed it proper to act against the officer de facto, because the supreme court had decided, (though a writ of error was then pending,) that the .title of the claimant was good and legal. I considered it my duty to act upon this decision without speculating on the possibility of its being reversed, regarding the supreme court as the appropriate tribunal for the determination of legal questions, the .decisions of which, while ¡¡inreverseij, all inferior officers were bound to respect and obey.
“ But it is obvious to me that the legislature never intended the judge should exercise his power to enforce the delivery of books and papers against an officer defacto, where the title of the applicant to the office is questionable. He must have a prima fade title, free from reasonable doubt. Such I take to be the opinion of the judges of the supreme court expressed in relation to this very proceeding. The chief justice speaks of it as an ‘ informal application to a judge at chambers, who is'to proceed summarily, and whose determination upon the matter is final;’ and contrasting it with the remedy by mandamus, he observes, that the proceeding in the latter case is ‘ according to the principles of the common law, where questions of fact may be determined by a jury, and of law by the court, subject to rbview on error.’ Mr. Justice Bronson remarks : ‘ If the relator wishes to try the right to the office, it must be done by quo warranto. If his title is clear, he has a complete remedy by applying to a judge for an order to deliver the books and papers;’ and the whole opinion of the learned judge is an elaborate argument to show that the title of the applicant is not clear. Mr. Justice Cowen, in his brief concurrence in the denial of the remedy by mandamus, says, ‘ the relator, if he is cleric, has another specific legal remedy,’ &c.
*634 “ The conclusions then at which I have arrived seem to me to dispose of this application. An officer acting under the statute in question has no right to grant the order prayed for, unless the title of the applicant is clear, and free from reasonable doubt. The title of the applicant in the present case is not thus clear and free from doubt, since we not only find opposed to him a clerk de facto, holding and exercising the office under claim and color of right; but besides, two of the judges of the supreme court who have delivered opinions on the applicant’s title, differ in their views with regard to it, and its ultimate establishment involves the examination of questions which I cannot say are free from legal doubts. The application is therefore denied.”