Baldwin, J.
Corporations aggregate are artificial beings created for specific and limited objects, public or private, in order to conduct and continue in succession the interests pertaining to those objects, by the exercise collectively of appropriate legitimate means, such as natural persons may employ individually. The difference between the powers of corporations and individuals is to be found mainly in the limited objects of the former, and the necessity of their acting in a concrete character. It is essential to corporations, as well as individuals, that they should have the capacity to sue and be sued, to make contracts, to acquire and alienate property. Without these powers the purposes of their institution could not be accomplished. But they have not, like individuals, an unlimited discretion in the application of those powers. They may not exercise them for purposes foreign to their creation. A bank of discount and deposite cannot engage in manufacturing or agricultural pursuits; an insurance or mining company cannot discount bills or notes, or circulate their paper as money ; a road or navigation company cannot speculate in lands or stocks. But all such corporations have the right to secure and collect debts due to them, and consequently to *21 obtain deeds of trust or mortgages therefor upon property real or personal, or to commute them by taking in payment assignments of dioses in action, or conveyances of lands or goods. The authority to use such means is to be determined by the lawfulness of the end which they are employed to accomplish.
Í It is true that the capacity of corporations at common law to purchase and hold lands and chattels is laid down broadly in the books, though I am not aware of any case in which the question was made whether this power was unlimited. However this may be, I think it clear that onr statutory corporations cannot take and hold real estate for purposes wholly foreign to their creation. 2 Kent’s Comm. 229, 240; First Parish in Sutton v. Cole, 3 Pick. 232; Broughton v. The Manchester Water Works, 5 Eng. C. L. R. 215.
Nor can it be doubted that the powers incident to corporations at common law may be restrained aud limited, by legislative enactments of a general character. An example of this may be found in the English statutes of rm^rtmain, by which corporations, whether lay or ecclesiastical, are prohibited from purchasing lands without the king’s license; and which took away entirely the capacity in that respect vested in corporations by the common law. 2 Kent’s Comm. 228. But these statutes have not been adopted in Virginia, and we have no general legislation of that nature, impairing the incidental power of corporations to acquire real estate. On the contrary, it has with ns been extended by statute. The English statutes of wills, 32 H. 8, c. 1, and 34 H. 8, c. 5, authorizing devises of lands to any person or persons, expressly excepts bodies politic and corporate ; whereas our statute on the same subject, 1 Rev. Code, p. 375, confers the power of devising generally, without restriction as to the capacity to take on the part of devisees.
*22 It is, moreover, unquestionable that the general incidental power of a corporation, whether derived from the common or the statute law, may be curtailed by the provisions of its legislative charter, either expressly or by necessary implication. Thus the charter may in terms prohibit the corporation from purchasing lands or goods for any purpose whatever, or for any but a particular specified purpose: or the prohibition may be implied from an insertion, by way of enactment, of the general incidental power to purchase, with a proviso limiting it to a given purpose. But a general prohibition would not be inferred from a mere partial enactment of the incidental common law power; as, for example, from a clause authorizing a bank, or insurance, or manufacturing company to purchase land for the erection of its necessary buildings. Such a clause, whether with or without limitation as to quantity or value, would not exclude the incidental power to take mortgages or other securities on real or personal estate, for debts due the corporation, or assignments or conveyances of chattels or lands in commutation therefor.
The incidental capacity of a corporate body to acquire property for its chartered objects, is for the most part salutary, and the entire prohibition of it would often be productive of great inconvenience. Nothing is easier, whenever sound policy may require the denial of this otherwise inherent power, than a plain manifestation of such legislative intent in the charter of incorporation ; and it ought not to be lightly inferred, but made manifest by express terms or necessary implication. To avoid altogether the contract of a corporation, made in reference to the objects of its institution, is a measure of extreme rigor; and may be productive of great injustice to the corporation on the one hand, or to the other contracting party on the other. An incapacity to take will not even be inferred from an inhibition to hold, though the policy of the latter be to prevent the *23 accumulation by the corporation of a specified description of property, if the purpose of the conveyance be a a sale of the property by the corporation, and the application of its proceeds to the objects contemplated by the charter. This proposition, reasonable in itself, may be fairly deduced from the cases of The Banks v. Poitiaux, 3 Rand. 136; Leagure v. Hilligas, 7 Serg. & Rawle 313; and Baird v. The Bank of Washington, 11 Serg. & Rawle 411.
In the case before us, the purposes for which the two corporations were created were, in regard to the Rivanna Navigation Company, the opening and improvement of the navigation of a river; and in regard to the Rivanna and Rockfish Turnpike Company, the construction and keeping in repair of a road. The charters contain various provisions for obtaining, by contract or condemnation, the lands requisite for the operations of the companies; for their organization and government; for raising by subscription the capital to be employed; and for levying the tolls to be enjoyed. But there is nothing in them prohibiting the corporations, either expressly or by implication, from availing themselves of other resources, for the advancement, completion and enjoyment of their proposed enterprises, respectively. It surely cannot be supposed that they would violate their charters by accepting, whether from stockholders or strangers, donations of money or property, in aid of their other funds, for promoting the objects of their institution. If there be any difficulty in regard to their capacity to take the donations by will in question, it must arise out of the relation which they bear respectively to the specific subject of the devise or bequest; it being, in either case, shares which the testator owned in the capital stock of the company.
The question then is reduced to this, whether either of these corporations is incapable in law of taking a devise or bequest of shares in its own capital stock. The *24 incapacity, if it exists, is equally applicable to both; though the stock of one of them, the Rivanna Navigallon Company, is by its charter real estate, and of the other, the Rivanna and Rockjish Turnpike Company is by its charter personal estate. In the view that I take J _ 1 of the subject, it is immaterial whether the property be of the one character or the other.
What is there in the relation which either of these corporations bears to the subject of the devise or bequest that renders it incapable of taking ? If capable of taking, there is an end of the controversy, whatever may be the consequences of doing so. With these the representatives of the testator have nothing to do : nor is it competent for any Court, whether of law or equity, to interpose and prevent the devisee from taking, on the ground that it will be productive of injurious consequences. That is a matter not for judicial, but for legislative action. If it be unwise, or unjust, or inconvenient, that corporations should have the capacity to take such bequests, the remedy must be applied by general legislation, or by disabling clauses in the charters of incorporation. If by acceptance of the intended benefaction, the corporation violates the' spirit of its charter, or invades the rights of any portion of its members, or introduces disorders into its own administration or government ; these are evils to be redressed by the appropriate judicial proceedings, having in view the rescission of the charter, or the abrogation of the wrongful act, or the rendering compensation to those aggrieved. At most, the act is only voidable, on the ground of misuser or abuse of the franchise, and cannot be drawn in question collaterally, especially by those having no longer any interest in the subject. The Banks v. Poitiaux, ut sup. Silver Lake Bank v. North, 4 John. Ch. R. 373.
The objection of inconvenience and danger of abuse urged by the appellees’ counsel, if well founded, would tend to shew, not the incapacity of these corporations to *25 take, but the impropriety of their accepting the devises in question; a matter in which the appellees have no lawful concern.
The alleged inconvenience and danger of abuse are founded upon a supposed merger, and consequent loss of representation, of the shares bequeathed, in the other capital stock of the company; or if that should not occur, and the separate existence of those shares be preserved, upon a supposed representation of them in behalf of the company, to be wielded by its officers. If these should turn out to be practical, instead of hypothetical mischiefs, it will be time enough to redress them when they actually occur, by the proper modes of proceeding ; and it would be a waste of time to consider them now. I will merely remark as to the suggested merger, that the charter of each company vests the shares of capital stock purchased by the subscriptions of "its members, not in the corporation collectively, but in the subscribers respectively as tenants in common, and authorizes their transfer upon the books of the company : so that the acquisition by the company in its corporate character of some of the shares, produces no union thereof with the shares owned by others; nor can it prevent the corporation from selling out the shares so acquired whenever its duty demands it. And as to the abuse of giving representation to shares temporarily owned and held by the corporation, I need only advert to the appropriate and effectual remedy of an information in the nature of a quo warranto. Examples of a statutory proceeding on such occasions, of a similar nature, will be found in the cases cited for the appellees of Ex parte Holmes, 5 Cow. R. 426 ; and Ex parte Destoyty, 1 Wend. R. 98.
My opinion is that the Chancellor erred in declaring the bequests in question to be void, and directing the shares to be sold by the executor, instead of declaring *26 them to be good and effectual in law, and giving to the . ^ companies the proper relief.
Stanard, J. concurred in the results of Baldwin’s Opinion.
Brooke, J. dissented.
Decree reversed, and cause remanded.