### In the matter of THE UNION INSURANCE COMPANY.

Where, by the act incorporating an *insurance company*, the management of the stock and affairs of the corporation is given to a board of *twenty-three directors* to be annnally elected, a *major part of whom* by the act are competent to the transaction of all the business of the corporation, and an election of directors takes place, at which only *twenty-two persons* receive a plurality of votes, *such twenty-two persons are duly elected*, and take the place of their predecessors, notwithstanding that it chanced that the *full number* of twenty-three directors was not filled up.

Where, under such circumstances, the old board conceived that the election had *wholly failed*, and a *second election* was held by their order, at which *twenty-three directors* were chosen, this court, upon the *summary application* authorized by statute, *set aside* the second election, *declared* the *twenty-two directors* first chosen duly elected, and *ordered* a new election

to supply the vacancy of the one director who was not chosen at the first election.

Application was made to the court *previous* to the second election to declare the twenty-two persons, directors of the company, and to direct the election of *one* additional director; but the court refused to act upon it, considering the proceeding *premature*.

*It seems*, that the stockholders, without any order of the court, have the power to fill up a vacancy happening under the above circumstances; *and further*, that on the neglect of the board to make order for an election to supply such vacancy, that a *mandamus* would lie.

CORPORATION election. The Union Insurance Company was incorporated in 1818; its charter was amended in 1819, and was extended in 1837. *Statutes of* 1818, *p.* 63; 1819, *p.* 130; 1837, *p.* 110. At the annual election for *twenty-three directors* of the company, held on the 13th day of January last, some of the stockholders voted for the *whole number* of persons to be chosen directors; others voted for only *twenty-two*, and some voted for a less number. On canvassing the votes, it was found that *John Ferguson* and others, in all *twenty-two persons*, had a plurality of votes, and that *fifteen other persons* having the next greatest number of votes, *each* had an *equal* number of votes, and consequently there was no election for the *twenty-third* director. The old board of directors, after taking counsel, were of opinion that the most expedient and safe course was to treat the election as having *wholly failed*, and to order a new election for the whole number of twenty-three directors. Having no by-law providing for the case, they, in pursuance of R. S. 597, §42, ordered the election to be held on the *tenth* day of February. Previous to which day, at a special term of this court held in February, Mr. *Justice* COWEN presiding, J. I. ROOSEVELT, jun. of counsel for *John Ferguson*, moved for a rule declaring the *twenty-two persons* who received a plurality of votes at the election held in January, duly elected directors of the company, and directing the election of an additional director, so as to make up the whole number of twenty-three directors. R. EMMETT, of counsel for the old board, insisted that the court, in the present stage of the proceedings, could not take cognizance of the case, and that the remedy of the re-

lator, if any, was by information in the nature of *quo warranto*. At the March special term, the following opinion was delivered :

By Cowen, J. The first objection raised by the opposing counsel is, that this court has no jurisdiction. That depends on the true construction of the act, 1 *R. S.* 600, § 57, 8, 2*d ed.* The article to which the sec tions quoted belong, (article 2d,) contains various regulations concerning the election of directors of moneyed corporations. Then section 57 provides, " that if any person shall conceive himself aggrieved by *an election* or *any proceeding concerning an election of directors or officers* in any such corporation, he may apply to the supreme court for redress, giving a reasonable notice of his intended application, to the party to be affected thereby." Section 58 requires this court to proceed in a summary way, &c. and make such order and grant such relief as the circumstances and justice of the case shall seem to require. If the election be set aside, we are authorized to order a new election, at such time and place as we may appoint. *Id.*

It is objected that the statute presupposes an election to have taken place ; and that the party comes by motion to set it aside, on the ground that some proceeding in respect to it was irregular ; but that in this case, he applies, in the first place, for a confirmation of an election already made as to twenty-two of the directors, and as to the twenty-third, for a direction that the officers proceed to an election, none having been made ; and it is denied that we have power to interfere upon either branch of the application.

It appears to me that the matters intended to be provided for by the general words of the 57th section were no more than cases of election to which an information in nature of a *quo warranto* would be applicable. A party must be aggrieved by an irregularity in respect to some corporate election, and no doubt he must be aggrieved in a legal sense. In the case at bar, the relator insists that the twenty-two directors were legally chosen, and that the inspectors reported *specially* showing that they were so chosen ; but he admits

that they have not, as yet, been disturbed by the intrusion of others elected to their place. He complains, however, that the former directors, claiming to hold over, threaten and have taken proceedings to elect an entire board, on the assumption that the election of the 13th of January was entirely void. I think we have no power to interfere by staying those proceedings; taking it for the present that the old board are rightfully holding over till the new board shall be completed. I shall not deny that an information might be applicable at some stage. In England it has been doubted whether it will lie at all, at least whether the king's bench will, in general, allow it against one illegally usurping an office in a private corporation. So far as the right to office is in question, it has been held that the remedy will not in general be allowed, except where the public are concerned, which in respect to corporations can be said only of those which are municipal. This subject was very fully examined in the *Commonwealth* v. *Arrison*, 15 *Serg. & Rawle*, 127, where, although the doubt of which I have spoken is conceded as to England, it is, I think, clearly shown, that in this country the information may be freely used for trying the right to offices in private as well as public corporations. Most of the cases to that effect are there cited and considered. They arose in the neighboring states, and the doctrine certainly does not seem so clearly to have been understood in this court. It was, however, explicitly adopted by the 2 R. S. 482, *2d ed.* §28, *sub.* 1. And by section 59 of the statute upon which this application is founded, 1 R. S. 601, *2d ed.* we are authorized to withhold summary interference, if we think it best, and turn the relator, in a proper case, over to an information. The section says we may do that, if the case be such in which that remedy would be competent and effectual. This provision that the case must be such, &c. probably alludes to the distinction between a proceeding to oust an usurping officer, and a proceeding to compel a new election where a previous election has been set aside. In the latter case though we may, by a special provision of the 58th section, *id.* 600, order a new election, yet it is plain that this would be a proceeding rather in the

In the matter of the Union Ins. Co.

nature of a *mandamus* than a *quo warranto.* *The People v. Corporation of New-York,* 3 *Johns. Cas.* 79. I venture to say that a judicial proceeding merely to affirm an election *quia timet* is entirely without precedent, even with regard to municipal offices, where the inquiries have been instituted with the greatest freedom. I cannot believe the statute intended we should interfere in our discretion, as we may do in the course of an ordinary lawsuit. It is true the mere words which give power over *any proceeding concerning an election*, might by a liberal construction authorize us to do so. But a mere irregularity does not complete the case. There must be a *party aggrieved,* who is to make the motion. This motion does not concern any suit pending here, but is a summary remedy in nature of a suit, like a petition in partition, or a summons under the landlord and tenant act. In all such cases it is our business to see that there is some injury known to the law, and for which a remedy before existed. The statute is not intended to enlarge the catalogue of rights or wrongs, but merely to remedy those already known in a more summary way. The old method by writ of *quo warranto* was extremely dilatory, whence an *information* was introduced in its place; and although this was much more rapid, yet it was found unequal to that dispatch which the exigencies of money corporations sometimes demanded. Hence the statute upon which we are now moved. The whole is obviously but the substitution of remedies for wrongs already known to the law. To constitute a grievance in regard to either real or personal property, there must be some ouster or withholding of possession; and by a plain analogy, no party can be deemed technically aggrieved in respect to a corporate office, till that is withholden from the legal incumbent. It is not of the nature of legal remedies merely to declare that a party in the undisturbed possession of his rights holds that possession legally, or that the menaces of another to oust him are contrary to law. Courts have enough to do in relieving him after he is disturbed. Short of this they can do nothing practically operative—they can only speculate. There is, technically, no offender against whom they can act; no sufferer whom they can relieve.

I am, therefore, clearly of opinion, that so far as we are called upon to declare the election of twenty-two directors valid, the motion is premature.

Then as to the resolution taken by the old directors to regard the entire proceedings of the 13th of January as a nullity, and their refusal to call an election for one director only.    This is complained of as a *non-feasance*, on the ground that there is already a complete election of all except one.    Admitting that to be so, how can we, in this summary way, put them in motion, without overstepping the power conferred by the statute?    I admit a *mandamus* would lie, if that remedy extends, and I believe it does, to a private corporation.    1 *Strange*, 696.  3 *Burr*. 1265.    And it might have been just as well to give us a summary power in such a case, as to declare in section fifty-eight, that we may direct a new election after setting aside a former one.    But this last is the only case mentioned by the act in which we can put the officers in motion.    All other instances of power must be collected from the general words of the previous section, which I have already shown cannot be understood to cover any portion of the ground occupied by a mandamus.    That writ, as it is now extremely well understood, goes, in general, not to correct or control any proceeding already taken, or to stay proceedings; not to rectify any misfeasance ; but merely to put officers in motion who refuse to act.    It lies, in short, for non-feasance only.    A prohibition sometimes goes to stop inferior courts ; but not a mandamus even there.    When the statute, § 57, speaks of the *party aggrieved* applying for redress against a *proceeding* concerning any election, it would be a perversion of its very terms to say they meant a *neglect to proceed*, or a refusal to institute proceedings.    I will only repeat that this section must be confined to an actual election, which the mover complains is vicious by reason of some irregularity in the way to it.    I hold with the counsel for the old directors here, that there must first be an election *de facto*, before we can entertain a motion under that section ; and the motion must then be not to confirm, but to set it aside. And this was probably the reason why no provision was

made in section fifty-eight for ordering a new election, except where a previous election had been vacated. The power to fill vacancies is thus made exactly commensurate with the power to create them.

So far I have assumed that the former directors are all properly holding over, and excluding the new directors from their place, on the ground that it was impossible to say from the general form in which the election ballots were framed, that any one of the twenty-two were intended to come in place of any one of the old board. But this is denied by the relator, who claims that such a general election, though of twenty-two only, they being sufficient by the eighth section of the original charter to constitute a board, completely superseded the whole of the former twenty-three. Then it is insisted that they should be ousted as intruders. But the conclsive answer is, that they were regularly elected; and, as I have shown, the case is, therefore, not one for summary removal. In this aspect it is not one of *election*, or any *proceeding concerning an election;* but only of improperly *holding over*. If I was right in saying that our summary power was confined to such cases of election as could be reached by information, with the corresponding addition of a power in the nature of a mandamus to supply any vacancy which followed, then the last branch of the relator's application is answered. He must be left to his course by information.

On the whole, my conclusion is, that the relief applied for is not, in any of its branches, reached by the statute.

I have, therefore, omitted to inquire whether Mr. Ferguson has a right to apply, in respect to his interest, or whether the notice of the motion was addressed to the proper persons; nor shall I pronounce an opinion whether the old directors, when this motion was made, were proceeding correctly to a total instead of a partial election, or whether they were left with any power to proceed at all, or perform any other act as directors. The questions sought to be raised cannot arise till we are brought to see whether the new election has taken place.

I might, perhaps, without impropriety, have, at one stage, considered the effect of the election of the 13th of January, in order to a mandamus commanding the election to proceed for one director only, had I thought that the twenty-two had been duly elected. But as the contemplated election of the 10th of February has probably taken place before my other avocations admitted of examining the question with that portion of care which I thought necessary, I presume it is now too late to interfere in the form mentioned. Nor will there be any serious inconvenience arising from this ; but I should think the contrary ; for, if the election has been consummated, the question now sought to be raised will have been brought within our power of summary examination.

The motion is denied as premature, without prejudice to a future motion concerning the election proposed for the 10th February.

On the tenth day of February a new election was held when *Jeremiah P. Tappan* and *twenty-two other persons* were voted for as directors, (no other persons being voted for,) and were declared elected. *Ferguson* appeared and protested against, but took no part in the election. *Tappan* and the others who were declared elected, entered upon the discharge of their duty as directors of the company.

*J. I. Rosevelt, jun. & M. S. Bidwell*, on behalf of *Ferguson* and others, moved for an order setting aside the election of *Tappan* and others on the 10th February—declaring the twenty-two who received a plurality of votes at the annual election in January duly elected, and directing the manner in which the place of the twenty-third director should be supplied.

*J. Slosson & R. Emmett*, on behalf of *Tappan* and others, opposed the motion.

After advisement, the following opinion was delivered by Mr. *Justice* BRONSON, which was concurred in by the other judges.

At the annual election in January, some of the ballots contained the names of less than twenty-three persons for directors, and it is said that those ballots were void. No authority was cited in support of this position, and both the law and the reason of the thing are the other way. When an elector or stockholder wholly omits to vote, he virtually consents that the election shall be made by those who choose to exercise the privilege, and he cannot afterwards object that they have selected officers whom he does not approve. If he vote for a part only of the officers to be chosen, he waives his privilege as to the residue, and tacitly consents that the other electors or stockholders may select such persons as they deem proper. His vote is good, so far as it goes. This has, I think, never been questioned in relation to elections for senators, members of assembly, assessors, and other public officers where several persons are to be elected to the same office. In *The People* v. *Adams*, 9 *Wendell*, 333, *five* constables were to be chosen, and *none* of the electors voted for more than *four;* and yet no one doubted that four were duly elected. In the case at bar, a part of the stockholders voted for the whole number of directors to be chosen. No one thought of disregarding the charter. Those who voted for a part only, virtually acquiesced as to the residue, in what was done by the other stockholders. *Old-Know* v. *Wainwright*, 2 *Burr.* 1017. The ballots having less than twenty-three names upon them were clearly good.

II. Of the persons voted for at the annual election, two received a *unanimous* vote, the next nineteen received a *majority* of all the votes, and the next highest candidate received a *plurality* of votes, which is all that the charter requires. But it is said that there was no election in consequence of the accidental failure to choose a twenty-third director. I cannot yield to that argument. The charter, as amended, provides, that the affairs of the company shall be managed and conducted by twenty-three directors, " the major part " of whom " shall constitute a board and be competent to the transaction of all the business of the corporation." §4, 8. The directors are to be chosen annually on

a specified day, and are to hold their offices for one year, "and until others shall be chosen to supply their place." §4. A failure to elect at the proper time, does not work a dissolution of the corporation. §6. On the charter day, an election was regularly held for a new board of directors, when twenty-two individuals received the requisite number of votes, and were, I think duly elected. If less than *twelve*, "the major part of twenty-three, had received a plurality of votes, it may be that the whole election would have been void. There would not have been a sufficient number of the directors newly chosen, to constitute a board and transact the business of the company. They could not act in conjunction with the old directors, for then there would be two many; and they could not displace a part only of the former directors, for it would be impossible to determine whose places in particular they should take. But here, there were *twenty-two* persons who received the requisite number of votes—they may constitute a board, and are competent to transact all the business of the corporation. The old directors—not twenty-two only, but all of them are out of office: others have been chosen " to supply their place." The provision for holding over was made for the purpose of guarding against the possible dissolution of the corporation for the want of proper officers to manage its affairs, and there was no danger of such an occurrence after a sufficient number of directors had been chosen to constitute a new board. This case does not differ in principle from *The People* v. *Jones*, 17 *Wendell*, 81, and we see no reason for departing from that decision. It follows, of course, that the special election held in February was irregular, and must be set aside.

III. We are authorized, in this summary way, not only to set aside the election and order a new one, but " to make such order, and grant such relief, as the circumstances and justice of the case shall seem to require." 1 R. S. 598, § 48. The power is broad enough, and as we entertain no doubt concerning the legal rights of the twenty-two persons who received a plurality of votes at the annual election, we shall declare them duly elected. The interest of

the stockholders requires that the whole controversy should be terminated. In *Ex parte Desdoity*, 1 *Wendell*, 98, the election, as to certain persons, was set aside, and others were declared duly elected ; and see also *Matter of the L. Island R. R. Co.*, 19 *Wendell*, 37, 45. It is true, that the twenty-two directors were not chosen at the special election which we set aside; but their legal rights, and the regularity of that election, stand indissolubly connected ; and as the decision necessarily covers the whole ground of controversy, I think the order may be equally extensive in its influence.

IV. As we set aside the election of the twenty-three directors who are now managing the affairs of the company, and as only twenty-two persons were elected in January, there will be one vacancy in the board of directors. I entertain little doubt that the stockholders may supply the place, without any order of this court. When there is nothing in the charter or other statutes controlling the question, the power of election is said to be a necessary incident to the corporation, for the purpose of perpetuating the succession. 2 *Kyd on Corp.* 3, 5. *The King* v. *The Mayor of Thetford*, 8 *East*, 270, *and note (c).* *Angel & Ames on Corp.* 63. But it is not necessary to decide that question. Our powers are broad enough to provide for the case, and we shall order an election to supply the vacancy ; directing such notice as is required for other elections by this company, and the inspectors to be appointed by the board of directors.

Ordered accordingly.