## SUPREME COURT.

### IN THE MATTER OF THE ELECTION OF THE PIONEER PAPER COMPANY.

At a meeting of the stockholders of a corporation to elect trustees, the person first nominating a chairman is entitled to declare who is elected such chairman, without regard to the question whether he is elected by a majority of stockholders or shares voting.

This court cannot review the regularity of the election of a chairman, but only the election of trustees.

If the opposing party do not acquiesce in the party first moved and declared elected, but organize another meeting, instead of offering to vote at first meeting, they waive all objections to the first election.

On declaring which trustees are regularly elected, this court, under the statute, has further power to enjoin the other trustees from acting, and to compel them to deliver the corporate property to the trustees declared elected.

*Schenectady General Term, May,* 1864.

*Before* POTTER, BOCKES, JAMES *and* ROSEKRANS, *Justices.*

THIS was a motion made at the Saratoga special term, before Justice BOCKES, April 7, 1864, to declare Wilson, Comstock and Strever elected trustees of said Pioneer Paper Company, March, 1864.

The facts appearing before the court were that Wilson owned 47 shares; E. Comstock, 40 shares; S. A. Parks, 10 shares; Jane Buchanan, 10 shares; and S. A. Parks & Co. originally 193 shares. The firm consisted of Parks and Buchanan when the stock was taken, in April, 1859. In December, 1859, Buchanan surrendered 113 shares of that stock, and procured new scrip in his own name. The other 85 shares remained in the name of S. A. Parks & Co.

In June, 1863, Parks assigned his interest in said stock to E. Comstock, and he brought an action in the supreme court to set aside the transfer to Buchanan of said 113 shares.

On the 7th of March, 1864, a judgment was entered at special term directing Buchanan to surrender said scrip and transfer said 113 shares to Comstock and himself jointly, without prejudice to any equities between Buchanan and

Parks, when it should be determined in a future action, to which Parks might be a party, who should be entitled to said stock.

Buchanan at once appealed from said judgment to the general term, and stayed the proceedings on said judgment before the same was executed.

At the election, Comstock moved that Wilson be elected chairman of the meeting of stockholders, and voted 40 shares in his favor. Buchanan and Parks voted against Wilson as chairman; and if said 113 votes standing in the name of Buchanan, or the 85 shares standing in the name of S. A. Parks & Co., were counted, the said Wilson was voted down. Comstock declared Wilson was elected chairman, and Parks and Buchanan declared he was not, and then organized a new meeting, electing Parks as chairman. At this meeting, Parks, Buchanan and Blood were elected trustees by the 213 votes. At the meeting presided over by Wilson, himself, Comstock and Strever were elected trustees by the 87 votes owned by them.

Upon this state of facts, Justice BOCKES made an order, at special term, declaring the Comstock trustees duly elected.

The following is the opinion given:

BOCKES, J. There is no statute or by-law declaring the mode in which the election of trustees for this company shall be conducted; and it was conceded by the counsel on the argument that in such case the stockholders should proceed on the day of election, as they did in this case, by appointing a chairman, who should conduct the election, receive the votes and declare the result.

In this the counsel on both sides agree. I shall therefore assume, under this concession, that the course adopted, to wit., the selection of a chairman to conduct the election, was well enough, and proceed to examine the case with a view to determine which of the two chairmen who assumed to act must be deemed to have been properly and duly chosen. This it was claimed by the defendant's counsel on

the argument was the only question necessary to be examined on this motion. It seems that the parties interested congregated on the day of the election, when a motion was made by one of the stockholders that Mr. Wilson, the acting secretary and treasurer of the company, act as chairman to conduct the election, which motion was voted on and declared carried. Thereupon another stockholder was chosen to act as secretary. Mr. Buchanan swears that he and Mr. Bullard voted on the motion to make Wilson chairman. This is denied in the moving papers. Perhaps this is of no importance; but if so, it shows a participation in the proceeding which they immediately and ever since have denounced as illegal and void. Immediately after voting on the motion to make Wilson chairman, and probably so soon as it was announced that the motion was carried, Mr. Bullard moved that Mr. Parks be chairman, and he and Buchanan having voted in favor of the motion, it was declared carried; and thus there were two elections being conducted in one room, at the same table, for the same officers. Each chairman was chosen by a similar formula, Wilson having the precedence in point of time. No objection was then or is now made to the mode of procedure. The question, then, is, which election should be deemed and held to be legally organized? It seems to me that the first regular and formal proceeding for an organization should have a preference in law. Any other rule would be disorderly and anarchial, would tend to confusion, excitement and indecorum, likely to lead to unfairness, if not to active personal violence. Even if irregularity or wrong should be suffered in the proceedings, after a formal and regular initiation of them, to the injury of any one, the law would afford adequate redress; for the party aggrieved could apply to the court summarily to set aside the election and redress the wrong. This course, rather than personal vindication of the supposed violated rights, is orderly both in its process and results. So if Buchanan and Bullard did not vote on the motion to make

Wilson chairman, as it was a regular and formal initiation of the proceedings, and there was no vote against the motion, he was regularly chosen to conduct the election. If they did vote, as Buchanan swears they did, they were either out voted, or were so wrongfully declared; and in the latter case it was their duty to have rested on their legal rights, by applying to the court for protection and redress, rather than enter upon a course of disorder, by attempting in the same room, and at the same table, to organize and carry on an opposition election. Such action has none of the elements of fairness, propriety or want of passion which should characterize a legal or any proceeding. It may be asked, what if your rights are openly violated? I answer, the law affords speedy and ample remedy, and besides it is equally unseemly to take the law into one's own hands and seek redress by disorderly action. But there is in fact no evidence of any unfairness or improper conduct on the part of Wilson or those acting with him. It is asserted that they declared that they would not recognize Buchanan or Blood as stockholders. But if this assertion was made, which is denied, Wilson was not put to the test; for no vote offered was rejected by him. Having been chosen chairman at the proper time and place, and in a formal manner, the parties opposed to him should either have withdrawn, resting on the errors and irregularities already committed as grounds for setting aside the proceeding, or proceeded under protest to offer their votes; if received and fairly counted, and the result truly declared, showing their own candidates duly elected, they would have no just cause of complaint. But if, being offered, legal votes had been rejected, or if any trick or fraud had been perpetrated in the canvass or in declaring the result, they could make such improper conduct further ground of complaint to the courts. This is the plain course suggested by open and fair dealing, and is such as, in my judgment, the law requires. It seems very plain to me that

NEW YORK PRACTICE REPORTS.

the election conducted by Mr. Parks was irregular, illegal and void.

It is urged that if the election conducted by Wilson be sanctioned, the affairs of the company will be managed by three persons elected by a minority of the votes authorized by law to be cast. This is denied as a matter of fact by the minority counsel. But why did not the contestants vote or offer to vote at the election? They had the opportunity. Not having done so, they must be deemed to have waived such right Judge BRONSON remarks, *In the matter of the Union Insurance Company* (22 *Wend.* 591, *on page* 599), that when an elector or stockholder wholly omits to vote, he virtually consents that the election shall be made by those who choose to exercise the privilege; and he cannot afterwards object that they have selected officers whom he does not approve.

On the argument, I was inclined to set aside both elections; but I can find no ground of just complaint against the proceedings at the election over which Wilson presided. It is not enough for the contestants now to say that they did not vote; they could have done so. They factiously refused to vote, and are not now permitted to urge their own willful delinquency as a ground of relief.

I have not deemed it necessary to determine the questions of fact raised by the papers. If found for the contestants, the result of the motion would be the same.

It is also insisted by the counsel for the moving parties that neither Bullard, Blood or Buchanan had any right to vote, nor Parks, except as to ten shares, and further, that neither Blood or Buchanan are eligible to the office of trustee. But I do not deem it necessary to examine these questions. My views, above expressed, if sound, renders such examination unnecessary.

The motion must be granted declaring the election of Parks, Buchanan and Blood irregular, illegal and void, and establishing the election of Wilson, Comstock and Strever as

trustees (22 *Wend.* 591; 1 *W.* 98), also enjoining Parks, Buchanan and Blood as in the notice of motion asked.

Buchanan and his associates appealed to the general term.

A. POND, *for respondents.*
E. F. BULLARD, *for appellants.*

THE order appealed from was affirmed.
No further opinion was written.