IN THE MATTER OF THE LIGHTHALL MANUFACTURING COMPANY, ETC.

*Right of the stockholders in manufacturing corporations to designate a person to vote by proxy — it cannot be restricted by the by-laws of the company.— 1848, chap. 40, secs. 3, 4 and 7 — two inspectors of election must be appointed — by whom proceedings to determine the validity of an election must be instituted under section 5 of 2 Revised Statutes (7th ed.), 1534.*

In this proceeding, instituted by a corporation created under the general manufacturing laws of this State, and three persons claiming to have been elected trustees of the company, for a determination as to the validity of their election, it appeared that no election was held on the second Monday in January, 1887, as was

required by its by-laws, but that, in April, 1887, at the instance of one of the stockholders of the corporation, notices were published for an election to be held on April twenty-first, and that at the time and place mentioned in the notice an election was held, in which the said three persons claimed to have been elected by sixty-five votes out of 171 outstanding shares of stock. At the election one Cornwell, who held proxies from two persons, who appeared from the list of stockholders to be the owners of ninety shares of stock, was present and claimed to represent these owners and to be entitled to vote on their shares, but was not allowed to do so upon the ground that the by-laws of the company required that proxies must be held by a stockholder, and that as Cornwell was not a stockholder he was not entitled to vote.

*Held*, that the company was not authorized to adopt such a by-law, as the statute under which the company was incorporated, by declaring, in section 3 of chapter 40 of 1848, that "the election shall be made by such of the stockholders as shall attend for that purpose either in person *or by proxy*," did not restrict the right of a stockholder to select any person, whom he might consider to be desirable for that purpose, to vote upon his shares; and that as the statute creating this right did not impose any restriction whatever upon the stockholder, as to the person he should be at liberty to select, a corporation was not at liberty to restrict the privilege thereby conferred or to declare by its by-laws that it should not be so used.

It appeared that the election took place under the appointment and authority of one inspector.

*Held*, that while the statute (secs. 6 and 7 of 2 Revised Statutes [6th ed.], 399) has not expressly required the appointment of more than one inspector, the manner in which it has been framed, in the use of the word "inspectors," discloses the intention of the legislature to have been that one will not be sufficient.

That the appointment of one inspector did not satisfy the language of the law, and that he had no authority to hold the election.

The petition by which this proceeding was instituted was not subscribed by the company or either of its officers, but that was done by J. P. Fitch, as attorney, whose only authority to do so was founded upon the action of two trustees, who met at the office of the company on the day when the by-laws provided for holding a meeting, and themselves being a minority adjourned to another place, where they were afterwards joined by a third trustee, and then adopted a resolution directing the secretary of the new board to institute such proceedings as might be necessary and proper to test the validity of the election.

*Held*, that this failed to authorize the institution of these proceedings under section 5 of 2 Revised Statutes (7th ed.), 1534; that, at most, it empowered him to proceed, as he might and should have done, in his own name, as a person aggrieved, by the refusal of the old board of trustees to recognize him as an officer of the company.

*Matter of Syracuse Railroad Company* (91 N. Y., 1) followed.

APPEAL from an order denying a motion made to determine the legality of an election of trustees of a manufacturing corporation.

The proceedings were instituted under section 5 of 2 Revised Statutes (7th ed.), 1534.

*A. G. N. Vermillya*, for the petitioner and others, appellants.

*Alexander Cammeren*, for George H. Stover and others, respondents.

DANIELS, J. :

The corporation was created under the general manufacturing laws of this State. Its organization took place in May, 1885, and its by-laws designated the second Monday in January in each year as the time of the annual meeting of the stockholders for the election of its board of trustees. No election was held in compliance with the direction of the by-laws, but in April, 1887, at the instance of Allen G. N. Vermillya, one of the stockholders of the corporation, notices were published by the president for an election to take place on the 21st of April, 1887. At the time and place mentioned in the notice an election was held in which it has been asserted that William H. Jewett, Abram G. N. Rankin, William A. Osborn, A. G. N. Vermillya and J. L. Lamport were elected trustees of the company. For their election sixty-five votes were given out of 171 outstanding shares of stock of the company. Timothy Cornwell held proxies from George H. Stover and Edwin C. Turner for ninety shares of the stock. He was present at the election, claiming to represent these owners by virtue of the proxies which he held. A list of the stockholders of the company was read showing Stover to be the owner of seventy shares and Turner the owner of twenty shares, but Mr. Vermillya, from his own affidavit, appears to have objected to Cornwell voting " on the ground that proxies must be held by a stockholder." And as Cornwell " was not a stockholder he was not entitled to hold a proxy." And, an examination of the by-laws showing this statement to be correct, Mr. Cornwell refrained from voting. The affidavit made by Cornwell also sustains this fact, and that because of the objection he was not allowed to and did not vote upon the stock. A further objection has been made to maintain the appeal, that Stover was not at the time when the election should have been held under the by-laws, the owner of all these seventy shares of stock and entitled to vote

upon them. But as that objection was not taken at the election, and Mr. Cornwell was not for that cause deprived of the right to vote upon these shares, it very clearly cannot be now for the first time brought forward to support the appeal. If it had been presented at the time of the election the fact might have been shown to be otherwise. And there is certainly a probability that the objection incorrectly stated it, for Mr. Jewell, the president of the company, has sworn that on the 10th of January, 1887, when the election ought to have been held, it did appear on the transfer books of the company that Stover had the right to vote on eighty-eight shares of the stock, and that Turner had the right to vote on twenty shares, and that they had continued to have the right to vote on such shares to the time of the election on the 21st of April, 1887. The rights of the parties on the appeal must therefore stand upon the objection which was taken that Cornwell could not vote under the proxies for the reason that he was not a stockholder in the company. That was the only objection urged and it was allowed to prevail. And as Cornwell was present for the purpose of voting it had the effect of depriving him of the right, if that in fact existed, of voting on these ninety shares of stock. If he had been permitted to vote he might have voted against the persons who were declared elected as the result of the election. And if he had that would have defeated their election for the reason that they received no more than sixty-five votes. The point is accordingly presented whether the objection to Cornwell voting under the authority of the proxies was lawfully taken.

The by-laws of the company did direct that the proxies should be in the hands of a stockholder in order to entitle them to be voted upon. But the statute of the State, under which the company was organized, has created no such restriction, but it has provided in general terms, by section 3, chapter 40 of the laws of 1848, " that the election shall be made by such of the stockholders as shall attend for that purpose, either in person or by proxy." It has not restricted the right of the stockholder to select any person whom he may consider to be advisable for that object to vote under his authority upon his shares as a stockholder. In this respect the largest liberty has been secured and provided for the stockholders and being entirely unrestrained by the legislature this privilege was

maintained by the authority of the law.   Without having so declared
expressly the clear implication of the section is that it. was not
intended to impose any restriction whatever upon the stockholder
as to the person he should be at liberty to select to act under his
proxy.   And the statute having in this manner created this right in
as general a manner as it did, the trustees of the corporation were
not at liberty to restrict it or declare by their by-laws that it should
not be so used.

The authority to make by-laws has been given and prescribed by
the seventh section of the same act, and the trustees have been
authorized to make them "for the management and disposition of
the stock and business affairs of such company, not inconsistent
with the laws of this State, and prescribing the duties of officers,
artificers and servants that may be employed; for the appointment
of all officers and for carrying on all kinds of business within the
objects and purposes of such company." The only additional
authority given to the trustees of the company to make by-laws is
that contained by implication in section 4 of the same act, permitting
them to designate in that manner when the election of trustees
shall take place, and providing generally that in case of a failure
to elect at the time prescribed for that purpose that an election for
trustees in such manner as shall be provided for by the by-laws
may be afterwards held, and shall be valid and binding against
the company.   Neither of these sections in language, or by anything
to be inferred from them, appear to have been intended to confer
upon the corporation the power to restrict the right of its stockholders
to vote by proxy as that was declared in the other section of the act.
What the trustees were authorized to do was to adopt by-laws for
the management and disposition of the stock and business affairs of
the company, and to declare the duties of its officers, artificers
and servants, and provide for the appointment of officers, and
for carrying on all kinds of business within the objects and
purposes of the company, and to appoint the time when the annual
election shall take place.   And even this has been required to
be done by such by-laws as shall not be inconsistent with
the laws of this State.   A by-law declaring that a stockholder
should be restricted in his liberty of choice of the person authorized
to vote under his proxy, is inconsistent with the general liberty to

be implied from the provision of the statute authorizing the stock-holders to vote by proxy, and forms no part of either of the objects for which by-laws have been allowed by these sections to be made. It has been the practice of the courts to construe the authority of cor-porations quite strictly in this respect. The subject was discussed and considered in *Taylor* v. *Griswold* (14 N. J. L. [2 Green], 223), where in the course of its examination the Chief Justice said in *Rex* v. *Ginever* (6 Term Rep., 732), the power of making by-laws was delegated by the charter in very comprehensive terms. But a by-law giving to the senior bailiff a casting vote in case of a tie, was held to be illegal. So a by-law imposing an oath of office where none was required by the charter, was declared to be invalid. (*Rex* v. *Dean*, 1 Str., 536.) And a by-law restricting or extending the right of admission of a member, or of eligibility to office, or prescribing new or additional tests or qualifications to voters, was held to be unlawful. (Id., 227, 228.) In the *King* v. *Wardens, etc.* (7 Term, Rep., 540), a by-law made by a company in a corporation, to restrain the number of apprentices to be taken by any of the members, was declared to be void. And the same conclusion was adopted in *King* v. *Tappenden* (3 East, 186). And *Rex* v. *Spencer* (3 Burr., 1827), held that while the number of electors might be narrowed or fixed by a by-law, the eligibility of members could not in that manner be changed. And *People ex rel. Israel* v. *Tibbets* (4 Cow., 358), and *People ex. rel. Barker* v. *Kip* (Id., 382), followed this construction of the law. And it is entirely reason-able that it should be so followed. For if the trustees could in this manner limit the choice of the stockholder to only another stockholder, to exercise his authority under a proxy, it might still further be limited to either one of the officers of the company, or in fact to a particular one of such officers and the stockholder in that manner deprived of the power of exercising any choice as to who the persons should be for whom his votes might be in this manner cast. The policy of the statute has not been to restrict the right of the stockholder in this respect, but to vest him with liberty to select any person to act under his proxy in whom he might be willing to confide the exercise of this privilege, and carry into effect his desires. The objection ought not to have been interposed to the right to Mr. Cornwell to vote upon these shares. And when,

it was interposed it should not have been allowed to prevail as it was at the election. And the case of *Matter of Union Insurance Company* (22 Wend.,591), in no manner sanctions the election managed in this way, for Cornwell was not in attendance declining to vote and in that man ner silently giving his consent to the action by a majority of the votes cast, but he was there for the purpose and with the design of voting and was prevented from so doing by this unfounded objection.

The election took place under the appointment and authority of one inspector, while the language of the statute carries with it a clear implication that two or more inspectors must be appointed to preside at the election and legally manage and conduct it. (2 R. S., [6th ed.,] 399–400, §§ 6, 7.)

The law has not, it is true, expressly required the appointment of more than one inspector, but the manner in which it has been framed in the use of the word " inspectors," discloses the intention of the legislature to have been that one will not be sufficient. His appointment did not satisfy the language of the law, and he therefore had no authority to hold the election. The least number that can do that is two inspectors. If two or more had been appointed the ruling upon the objection which was made to the authority of Cornwell to vote, might very well have been otherwise and all the votes received which it was lawfully proposed to give at the election.

The petition by which the proceeding was taken, was not subscribed by the company or either of the officers, but that was done by J. P. Fitch as attorney. He has not sworn that he was authorized by any officer of the company to present the petition in the name of the company, while the affidavits used to oppose the motion show that a large majority of the stockholders of the company were adverse to the prosecution of this proceeding, and the only authority claimed to exist for it is the action of two trustees who met at the office of the company on the day when the by-laws provided for holding a meeting, and themselves being a minority, adjourned to another place, where they were afterwards joined by a third trustee and then adopted a resolution directing the secretary of the new board to institute such proceedings as might be necessary or proper to test the validity of the election. This failed to authorize

the proceeding which has been taken. It at most empowered Mr. Osborn to proceed, as he might and should have done in his own name, as a person aggrieved by the refusal of the old board of trustees to recognize him as an officer of the company. (*Matter of Syracuse, C. & N. Y. R. R. Co.*, 91 N. Y., 1.)

The affidavits in support of the election are extremely loose having been made upon information and belief, derived to a great extent from Mr. Jewell, the president of the company, and what he stated to have been the sworn testimony of Mr. Lighthall, in which, on some occasion not described or mentioned, he stated that Stover had not received forty of the shares of the stock owned by him until the 15th of January, 1887. The papers were very defectively drawn and presented, making no more than an informal statement of the facts upon which it was expected to support the application. It probably is not very important at this time that the application should be held not entitled to success, for early in the ensuing month a regular election can be held for a new board of trustees of the company. And if the officers shall fail to call it as they are bound in duty to do, then either one of the stockholders or any person aggrieved, may apply to the court for relief requiring an election to be held. (*Matter of Pioneer Paper Co.*, 36 How., 111; Angell & Ames on Corp., 10th ed., § 700.)

The order from which the appeal has been brought appears to have been rightly made, and it should be affirmed with the usual costs and disbursements.

VAN BRUNT, P. J., and BRADY, J., concurred.

Order affirmed with costs and disbursements.