In the Matter of the Election of Directors of P. F. KEOGH, INC.

LOUIS P. KEOGH and Others, Appellants; JAMES N. CLEARY, Petitioner, Respondent.

First Department, July 2, 1920.

Corporations — wills — bequest of business and good will with direction that business be incorporated — when stockholders are substantially partners — equity — stock held by testamentary trustee to enable him to decide controversies between other stockholders — proceeding to set aside election of directors — corporation necessary party defendant — by-law in conflict with section 25 of Stock Corporation Law — estoppel by refusal to attend meeting of election of directors — election confirmed.

Where a testator bequeathed his business and the good will thereof to his two sons and gave to his executor discretionary power to incorporate the business with the consent of the sons, and provided that the stock of such corporation should be equally divided between the sons, save that the executor should hold two shares as trustee in order to give him a balance of power to decide controversies which might arise between the sons, and the provisions of the will aforesaid were carried out, the two sons as stockholders occupied substantially the relation of partners and upon the death of one of them the shares held by the executor in trust for the brothers should, in equity, be equally divided between the surviving brother and the estate of the deceased brother.

Hence, the executor had no individual interest in the corporation which would entitle him to institute a proceeding under section 32 of the General Corporation Law to set aside an election of directors, though as executor he possessed an interest under said section which entitles him to maintain such proceeding.

In a proceeding under section 32 of the General Corporation Law brought to set aside an election of directors, the corporation itself is a necessary party defendant.

A by-law of a corporation, which provides that " A quorum shall consist of the majority of the stock represented in person or by proxy " at a meeting of the corporation, is in conflict with section 25 of the Stock Corporation Law, which provides that the directors shall be chosen by a plurality of the votes at an election, and is, therefore, invalid.

Where the testamentary trustee holding two shares of stock received due notice of the meeting for the election of directors and deliberately refrained from attending the meeting, he is estopped from subsequently attacking the validity of the election under section 32 of the General Corporation Law.

Moreover, under said section the court will see that " right and justice " is done, and under the circumstances aforesaid as the election resulted in giving the management to the son of the testator who was the only person competent to conduct the business the court will sustain the election and dismiss the petition.

SMITH and PAGE, JJ., dissent.

APPEAL by Louis P. Keogh and others from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of May, 1920, granting the petitioner's application to set aside the election of directors of the above-named corporation and for a new election.

*William D. McNulty*, for the appellants.

*T. Louis A. Britt*, for the respondent.

GREENBAUM, J.:

This is an appeal by the respondents in the court below from an order setting aside the election of directors of the corporation known as " P. F. Keogh, Inc.," and ordering a new election, pursuant to the provisions of section 32 of the General Corporation Law. The practically undisputed facts are as follows: The business now conducted by P. F. Keogh, Inc., originally belonged to one Patrick F. Keogh, who died in 1914, leaving a will under which he bequeathed the business to his two sons, James A. Keogh and Louis P. Keogh, one of the appellants, with directions that they form a partnership or corporation for the continuance of the business. The provisions of the will in that regard are:

" *Third.* After years of continual effort and endeavor, I have established a tailoring business to which I have trained my two sons, James A. Keogh and Louis P. Keogh, and each are (*sic*) now experienced to separate lines of work in said business, so that each (*sic*) working together can conduct the business successfully, and it is my express wish and desire that they continue the business, working in harmony together, and to carry out this wish and desire, I give and bequeath to my said beloved sons James A. Keogh and Louis P. Keogh, subject to the terms and conditions hereinafter mentioned, all the

good will and benefit of the tailoring business which I am now carrying on at No. 11 East 42d St., New York City, N. Y., and also all my capital and property which shall be employed therein at my decease * * * and that my executor hereinafter named, shall, in his discretion, but after first consulting with my said sons, prepare either articles of copartnership for a term of five years between my said sons, providing among other things that the said executor shall be the party to whom any disputes shall be referred, and whose decision shall be final thereon, and subject to the other conditions hereinbefore stated; or prepare articles of incorporation, the stock of which shall be equally divided between my said sons James A. Keogh and Louis P. Keogh, excepting that my said executor shall own two shares, not to exceed in value two hundred dollars, so that said executor may have a controlling vote in case it is necessary, on any question that may arise between my two sons relating to the said business, and subject to all the other conditions hereinbefore stated; and it is my wish that the said business be conducted in the name of ' P. F. Keogh,' or in the name of ' Keogh;' and that all the good will, benefit, including all the property heretofore referred to, relating to said business, shall be transferred to said copartnership or corporation when formed; in whichever way the business is arranged, *my two sons are to share equally;* and it is in the above manner that I wish the said gift and bequest to my said sons to take effect; and for all the purposes of this gift and bequest, I name, constitute and appoint James N. Cleary, my executor hereinafter named, as a *trustee,* to see that the gift and bequest is carried into effect in the manner hereinbefore provided and directed."

The petitioner, James N. Cleary, who is the respondent on this appeal, was the executor and trustee named in the will. In accordance with the directions contained in the will, a corporation was organized on June 10, 1914, with a capital stock of 150 shares, which was equally divided between the two sons, excepting two shares, which were delivered to Cleary for the sole purpose of enabling him to pass upon any business disputes which might arise between the sons as provided for in the will.

James A. Keogh was elected president, Louis P. Keogh was

the secretary and treasurer, and James N. Cleary was the third director. On November 9, 1919, James A. Keogh died, leaving a last will and testament, which was probated on February 25, 1920. Cleary was also the executor of that will. At this juncture it may be observed that James A. Keogh was the half-brother of the appellants Louis P. Keogh, Herbert J. Keogh and Frances F. Keogh. The respondent Cleary is the husband of Margaret V. Cleary, who is a half-sister of the appellants and who was a full sister of the deceased James A. Keogh. By the terms of his will all his shares of stock in the Keogh corporation were bequeathed to her and her husband, the respondent James N. Cleary, who was and is engaged in the plumbing business and had never participated in the management of the tailoring business excepting to the extent of deciding questions of difference between the two brothers. It does not appear to be disputed that the appellant Louis P. Keogh was trained as a designer, cutter and fitter of men's clothing and also as a salesman, and that in 1913 his father employed him as the exclusive cutter in his business. As to the deceased it is not denied that he never was a tailor and that " before his father's death he used to clean the shop, run errands, and locate delinquent customers; after his father's death, he kept the stock straight, cleaned up, collected and would assist  *  *  *  in meeting customers." It also appears that the business has prospered and there is no claim of mismanagement on the part of Louis P. Keogh. After the death of James A. Keogh, a meeting of the board of directors was held on December 5, 1919, at which Cleary was appointed president to fill the unexpired term of the deceased. An annual meeting of the stockholders was called for the 13th day of January, 1920, at twelve o'clock noon at the office of the company, 489 Fifth avenue, which were the time and place provided for holding meetings.

There is no question that there was due publication of the notice of the annual meeting and due observance of all other formalities and that each stockholder was duly served with notice thereof. Upon the roll call of stock, it was found that Cleary, who was the record holder of two shares of the company, was absent and that the seventy-four shares of the late James A. Keogh were also unrepresented. A recess was

held until six o'clock so that the stockholders might be advised whether they could regularly proceed with the meeting. The meeting was continued at six o'clock on the same day at the same place, and Louis P. Keogh, Herbert J. Keogh and Frances C. Keogh, all stockholders, were elected directors, seventy-four shares having been recorded in favor of the election of each of them. These seventy-four shares were originally the holdings of Louis P. Keogh. It appears that when he enlisted in the war he turned over all of his stock to his mother, and upon his discharge from the army his shares were divided equally between himself, his brother and sister above mentioned. After the stockholders' meeting Miss Frances C. Keogh was elected president, and Louis P. Keogh secretary and treasurer.

Cleary does not deny that he received due notice of the meeting above mentioned, but he attempts to excuse his failure to attend it upon the ground that, inasmuch as the directors in past years held over from year to year, he thought the same procedure would again be followed. Cleary, however, makes a charge of bad faith on the part of the appellants, based upon the fact that after the will of James A. Keogh was offered for probate they took proceedings to contest the will of their half-brother. Cleary claims that this was done to delay him in getting legal title to the shares of stock of the deceased Keogh. The appellants absolutely deny the charge of bad faith. The absence of bad faith seems to be supported by Cleary's explanation for not attending the meeting and by the significant circumstance that he makes no claim that he absented himself from the meeting because he was not then the record owner of the seventy-four shares of stock of James A. Keogh.

If Cleary thought that the purpose of appellants in contesting their half-brother's will was to delay him in asserting his legal title to James A. Keogh's shares of stock, it may be fairly assumed that the real reason for not attending the annual meeting was that he feared that the appellants would outvote him in the election of directors.

The appellants contend: (1) That the petition of Cleary is insufficient in law inasmuch as he is not a person "aggrieved" within the meaning of section 32 of the General Corporation

Law.  (2) That the proceedings in the court below were a
nullity because the corporation itself was not made a party
defendant.  (3) That the order appealed from is predicated
upon a by-law which is in conflict with section 25 of the Stock
Corporation Law and violative of subdivision 5 of section 11
of the General Corporation Law.  (4) That the petitioner
Cleary had no right as a matter of law to participate in the
affairs of the corporation for the reason that the corporation
was merely a partnership as between James A. Keogh and
Louis P. Keogh under the form of a corporation, and that
upon the death of James A. Keogh the partnership became
dissolved, and the survivor had a legal right and was entitled
to take exclusive charge of the business.

It is to be borne in mind that when the annual meeting
was held Cleary was the record holder of only two shares,
which he held under the direction of Patrick Keogh's will
merely to enable him to act as umpire in matters of difference
between the two brothers.  Upon the death of one of the
brothers there was nothing to umpire, and hence the purpose
for holding the two shares no longer existed.  The will of the
elder Keogh distinctly intended that the two sons were to be
the owners of the entire business.  It is also to be noted that
both parties upon the argument admit that the formation of
the corporation under the will of Patrick Keogh was a part-
nership as between the two brothers.  This admission also
explicitly appears in Cleary's petition.

It has been held in *Carney* v. *Penn Realty Co.* (174 App. Div.
86) that where two brothers were the sole corporate owners
of the corporation, as to each other they occupied substantially
the relation of partners.  When James A. Keogh died the
brothers had been in business together for more than the
five years named in their father's will.  It does not appear
that Cleary ever received dividends on his two shares of
stock.  Upon the death of James the two shares which were
merely held in trust for the two brothers should in good
conscience have been returned to the corporation or divided
equally between the surviving brother and the estate of the
deceased brother.

It follows that Cleary individually had no such interest in
the corporation when the annual meeting was held as to

entitle him to institute this proceeding. Although he was not the record owner of the shares of stock of the deceased James A. Keogh when the annual meeting was held, yet as his executor he doubtless should be considered as having such an interest under section 32 of the General Corporation Law as to entitle him to petition the court in this proceeding.

The point that these proceedings are a nullity because of the failure to make the coporation a party defendant, must be deemed well taken upon authority and reason. It has been so held in *Matter of Pioneer Paper Company* (36 How. Pr. 102) and *Matter of Schoharie Valley R. R.* (12 Abb. Pr. [N. S.] 396). That the corporation is a necessary party is obvious from the fact that it is peculiarly the party against which an order should run commanding it to hold a new election. Of course the directors are proper parties, but the corporation is an essential party. In view, however, of the conclusions we have reached in this matter, we deem it well not to rest our decision upon the omission to make the corporation a party.

We will now consider appellants' contention that the by-law which defined a quorum for annual meetings is in conflict with section 25 of the Stock Corporation Law. The by-law of the corporation reads as follows: " A quorum shall consist of the majority of the stock represented in person or by proxy," etc. Section 25 of the Stock Corporation Law (as amd. by Laws of 1918, chap. 267), however, provides as follows: " § 25. Directors. The directors of every stock corporation shall be chosen at the time and place fixed by the by-laws of the corporation by a plurality of the votes at such election." Section 11, subdivision 5, of the General Corporation Law provides *inter alia* that every corporation as such has power " to make by-laws, not inconsistent with any existing law, for the management of its property, * * * and the calling of meetings of its members. Such by-laws may also fix the amount of stock, which must be represented at meetings of the stockholders in order to constitute a quorum, unless otherwise provided by law." It is unnecessary here to enter upon any extended discussion as to the validity of the by-laws of the Keogh corporation, since authority for appellants' position in this regard is found in

*Matter of Rapid Transit Ferry Co.* (15 App. Div. 530), which seemingly has been recognized in *Ripin* v. *U. S. Woven Label Co.* (205 N. Y. 442, 448). In both of these cases the opinions were by CULLEN, J. The facts in the *Ferry Case* (*supra*) were substantially like those in the instant case. The by-law in that case provided: "A majority of the stock present in person or by proxy at any meeting of the stockholders shall constitute a quorum." As in this case the stock there appears to have been equally divided between two opposing interests. The petitioner in that case, as in this, did not attend the meeting in person or by proxy, so that the directors were chosen by a vote of only one-half of the stock. The court first referred to the common-law rule that " ' such of the shareholders as actually assemble at a properly convened meeting constitute a quorum for the transaction of business, and a majority of that quorum have authority to represent the corporation.' (Morawetz on Corp. § 476; 2 Kent's Com. *293; *Field* v. *Field,* 9 Wend. 395.) " The opinion (at pp. 532, 533) then discusses at some length the question under review and states that: " It cannot be seriously contended that the company could, by its by-laws, modify this statutory direction, and require that a majority of the votes of the whole stock of the corporation should be necessary to elect a director, or even that a majority of such stock should vote at the election. If it could not require that a majority of the stock should vote at an election to constitute it valid, it could not, by fixing the amount of stock necessary to represent a quorum, enable stockholders to defeat an election by staying away."

But regardless of the question of the validity of the by-laws of the corporation, it is pertinent to consider whether the petitioner has not estopped himself from claiming that the election was an illegal one. He admits that he deliberately refrained from attending the meeting, giving as his reason, not his inability to vote seventy-four shares of stock of the late James A. Keogh, but that he assumed that the election would result as usual.

In *Matter of Pioneer Paper Company* (36 How. Pr. 105, 109), where the contestants of an election had the opportunity to vote at an election and failed to avail themselves thereof, the court says: " But why did not the contestants vote or

offer to vote at the election? They had the opportunity. Not having done so, they must be deemed to have waived such right. Judge BRONSON remarks, in the *Matter of the Union Insurance Company* (22 Wend. 591, on page 599) that when an elector or stockholder wholly omits to vote, he virtually consents that the election shall be made by those who choose to exercise the privilege; and he cannot afterwards object that they have selected officers whom he does not approve." The petitioner should not now be relieved from the consequences of his own deliberate act.

There are also further considerations which should move this court in denying the application of the petitioner.

Section 32 of the General Corporation Law, under which this proceeding was brought, in its concluding words provides that the Supreme Court may " establish the election or order a new election, or make such order and give such relief as right and justice may require."

The guiding principle of the court should be to see that " right and justice " shall be done. Bearing this cardinal principle in mind, if a new election is directed, it is quite evident that under existing conditions the respondent Cleary could cast seventy-six votes, which would include the two shares of stock in his name, one of which equitably belongs to Louis P. Keogh, being a majority of the entire capital stock, and thus oust from the management of the business the appellant Louis P. Keogh, the only one who appears to be competent properly to conduct it. To permit such a result would be contrary to the wishes of the father who bequeathed his business to his two sons, since both parties agree that the business was virtually a partnership as between them.

Under these circumstances it would seem to be equitable to preserve the *status quo* and enable the surviving partner to wind up the affairs of the partnership and to prevent the management of the business going into the hands of one who is wholly unfamiliar with the important necessary details for managing a tailoring business.

No injustice can flow from a denial of the motion, for the reason that it is in the power of the petitioner and his wife, who have succeeded to the shares of stock of the late James A. Keogh, to resort to the salutary provisions of section 172

of the General Corporation Law, under which they would be enabled to take proceedings looking to the dissolution of the corporation should the appellants refuse to take steps to dissolve it.

The order appealed from should be reversed and the petition dismissed, without costs.

CLARKE, P. J., and DOWLING, J., concur; SMITH and PAGE, JJ., dissent.

Order reversed and petition dismissed, without costs.