In the Matter of the Election of Directors of BUSHWICK SAVINGS AND LOAN ASSOCIATION.

R. C. VON BAYER et al., Petitioners; BUSHWICK SAVINGS AND LOAN ASSOCIATION et al., Respondents.

Supreme Court, Special Term, Queens County, March 14, 1947.

*Zager, Fields, Zimmerman, Skodnick & Segall* for petitioners.
*Twohy and Kelleher* for respondents.

HALLINAN, J. Petitioners challenge the validity of the election of directors of the respondent, Bushwick Savings and Loan Association (hereinafter referred to as the "Association"), because of alleged irregularities, and bring this application pursuant to section 25 of the General Corporation Law to have themselves declared to be the duly elected directors of said Association or, in the alternative, that a new election be ordered by this court.

Each of the petitioners deposited $200 in the Association on November 18, 1946, and thus met the minimum requirements for eligibility to the position of director. (Banking Law, § 397.) The by-laws provide that members may cast one vote for each $100 standing to their credit on the books of the Association (art. I, § 5). On December 30, 1946, the petitioners were nominated for the position of director. Three of them, on January 20, 1947, attempted to deposit an additional $4,800 each to their respective accounts. The Association refused to accept these deposits in view of its regulation limiting members' deposits in any one month to the sum of $200. This refusal, the petitioners claim, was illegal. There is no merit to this contention. The by-laws of this Association (art. III, § 2, subd. 7) specifically provide that the directors may restrict the amount of shares which may be held by any one person. It is not the province of this court to pass on the wisdom of such a regulation, but it might be observed that many banking institutions limit the amount of money that may be deposited with them. Too much cash on hand can be as embarrassing to a banking institution as too little. Unless the funds deposited with it can be invested in productive enterprise, the bank cannot pay dividends to its shareholders.

The chief complaint of the petitioners, however, deals with alleged irregularities in the conduct of the election at the annual meeting held therefor on January 27, 1947, the adjournment thereof, and the election held on the adjourned date.

The petitioners attended the annual meeting to cast their votes and to act as proxies for others. The meeting was quite turbulent and from the very outset was marked by friction. As soon as it was called to order a director named Kastner sought to vote some proxies, but was challenged by one of the petitioners on the ground that it was illegal for a director of a banking institution to act as proxy under section 19 of the General Corporation Law, and an opinion of the Attorney-General that this section is applicable to directors. Kastner thereupon resigned as a director and his resignation was

accepted by the chairman of the meeting, the president of the Association. The same petitioner then objected to the resignation, on the ground that the meeting had been called for the election of directors and that no other business could be transacted at that meeting.

However, section 1 of article I of the by-laws provides, in part, as follows: "The annual meeting of the members of the association for the purpose of electing directors *and transaction of such other business* as may come before the meeting shall be held at 8:00 P.M. on the last Monday of January in each year * * *." (Italics supplied.) From the foregoing, it is clear that it was quite proper for a director to resign and for the chairman to accept such resignation at this meeting.

After this incident, it was noticed that there was a young woman present taking stenographic notes. She was not a member of the Association and the chairman requested her to leave. One of the petitioners said that she was his secretary and claimed that she had a right to remain. Considerable argument ensued, but finally the said petitioner said to her, "I'll give you a proxy." He thereupon struck his own name from a typewritten proxy signed by the petitioner Kahn, and inserted her name in ink. His authority to alter this proxy does not appear. A policeman was called to eject the young woman from the meeting, but he apparently declined to take any action. The respondent Clark thereupon moved that the meeting be adjourned to the following night. The motion was seconded and carried. Further discussion was had and apparently petitioners were under the impression that the meeting had been adjourned to February 6th. The respondents convened on the following night, but adjourned to January 31st in order to give the petitioners an opportunity to be present. They were notified and attended the adjourned meeting, but refused to participate in it contending that the adjournment was unauthorized.

It is inconceivable that a shareholders' meeting cannot be adjourned if it become necessary or advisable. Certainly, if the meeting becomes so turbulent that it cannot be conducted peacefully and without the aid of police officers, an adjournment would seem to be in order. As was said in *Matter of Young v. Jebbett* (213 App. Div. 774, 779): "In the absence of express regulations by statute or by-law, the conduct of meetings, including the election of officers, is controlled largely by accepted usage and common practice. The fundamental rule is that all

who are entitled to take part shall be treated with fairness and good faith." Moreover, the very proxy which was altered provided for its use at the annual meeting " or on any adjourned date thereof."

Since the adjournment of the meeting for the reasons already stated was a matter to be determined by a majority of those present entitled to make such a determination, it follows that the directors could validly be elected at the adjourned meeting, and this court finds no basis for disturbing such adjournment.

The petitioners have no basis for challenging the validity of the election held at the adjourned meeting. Their claim of insufficient notice of the adjourned meeting is without merit. " After a meeting has been convened by proper notice or waiver thereof and organized, it may be adjourned from time to time for the transaction of business, and no further notice to stockholders or waiver by them is required. The notice given respecting the original meeting extends to all adjourned meetings and corporations may transact any business at an adjourned meeting which they could have done at the original meeting, it being but a continuation of that meeting. [Citing cases] " (1 White on New York Corporations [12th ed.], p. 972.)

At the adjourned meeting the respondents were elected directors of the Association. The petitioners refused to vote or participate in any way. In so doing they may be deemed to have virtually consented that the election should be made " by those who choose to exercise the privilege " and they " cannot afterwards object that they have selected officers whom " they had " not " approved. (*Matter of Union Insurance Co.*, 22 Wend. 591, 599; *Matter of Keough, Inc.*, 192 App. Div. 624, 632.) It follows that the petition must be dismissed. Submit order.