PEOPLE *ex rel.* FLEMING *et al. v.* HART.

*(Common Pleas of New York City and County, General Term.* April 6, 1891.)

1. RES ADJUDICATA.

    In 1889 St. Stephen's Church elected a vestry. On the same day, in 1890, they elected another vestry. Thereafter in a *quo warranto* proceeding the election of some of the vestry-men was declared illegal, and they were ousted from their offices, leaving only three members of the body, who thereupon applied to the rector to join with them in holding a new election. He refused upon the ground that, the election of 1890 having been declared invalid, the vestry of 1889 held over. In the mean time W. and four members of the vestry of 1889, and also ousted members of the vestry of 1890, claimed to hold over, and instituted an action against the three remaining members of the vestry of 1890 to oust them from their offices, which action resulted in a judgment in favor of defendants. *Held,* that the judgments in said proceedings established that such defendants were lawfully in office pursuant to the election of 1890, and that the vestry of 1889 did not hold over, and were conclusive as to the titles of the respective claimants to said offices, and binding upon the rector of the church and all other persons not claiming title to such offices, (though not parties to said proceedings,) questioning the titles of such claimants in any collateral proceeding in which they and such claimants are parties.

2. RELIGIOUS SOCIETIES—VACANCIES IN VESTRYS—POWER TO FILL.

    Irrespective of the adjudications between the rival claimants to said offices, the legally elected members of the vestry of 1890 constituted a board of trustees, which, though not a majority of a full board, was competent to fill the vacancies caused by the displacement of the illegally elected members, as if such vacancies had been created by the resignation or death of a majority of the board.

Appeal from special term.

Application by Charles E. Fleming and others, relators, church-warden and trustees of the Protestant Episcopal Church of St. Stephen in the city of New York, for a *mandamus* requiring A. Bloomer Hart, rector of said church, to join with the relators in holding a special election to supply vacancies in the vestry of said church. The following facts appear in the case: St. Stephen's Church is organized under section 1, c. 60, of the Laws of 1813, and its church edifice is located on Forty-Sixth street, between Fifth and Sixth avenues. The defendant is, and for several years has been, its rector, and by virtue of the statute one of its trustees. Its articles of incorporation and by-laws provide for the election of two church-wardens and eight vestry-men annually on Monday, in Easter week, and at the Easter election in 1889, James Blackhurst and Charles E. Fleming were elected church-wardens, and Thomas F. Cock, Hobart B. Jacobs, Edwin K. Linen, James Maclaury, Edmund Luis Mooney, S. Montgomery Pike, Theodore E. Smith, and Stephen R. Weeks were elected vestry-men; that the date for the last Easter election was April 7, 1890; that the defendant, though present on the second Sunday prior thereto, and officiating as rector at the divine services in the church, and

though requested by one of the wardens to give notice of the annual election to be held April 7th, refused to give such notice, and thereupon such warden in the time of divine service gave notice of the election; that thereafter the supreme court duly granted its peremptory writ of *mandamus*, (11 N. Y. Supp. 670,) commanding the defendant, on Sunday, April 6th, to give due notice of the annual election to be held on the following day, and in pursuance of such *mandamus* the defendant did on the following Sunday give notice of the annual election to be held on Easter Monday, April 7, 1890, and on that day an election was held, at which the defendant presided, and was the returning officer. The defendant, as returning officer, announced that Stephen R. Weeks and Charles E. Fleming were elected church-wardens, and Thomas F. Cock, Edwin K. Linen, S. Montgomery Pike, Edmund Luis Mooney, Henry W. Mooney, William G. Smith, William S. Watson, and Charles Shroeder were elected vestry-men, and he caused the proceedings of the election to be entered in the book of the minutes of the vestry, and signed his name thereto, and offered the same to as many of the electors present as he thought fit, and the same was by them also signed and certified. Thereafter an action was brought in this court by the people of the state on the relation of James Black-hurst, James Maclaury, Theodore E. Smith, William G. Gardner, William W. Warren, William J. Smith, and Woodruff Smith against said Stephen R. Weeks, Thomas F. Cock, Edwin K. Linen, Edmund Luis Mooney, Henry W. Mooney, S. Montgomery Pike, and William G. Smith, for the purpose of ousting such defendants from the offices of church-warden and vestry-men, and a trial of said action before Hon. JOSEPH F DALY, judge of this court, and a jury, resulted in a verdict for the plaintiffs, on which final judgment was entered June 21, 1890, which ousted and excluded the defendants from such offices. (11 N. Y. Supp. 671.) At the time this application for *mandamus* was made there existed an injunction against the defendant, Hart, and the said Stephen R. Weeks, Thomas F Cock, Edwin K. Linen, Edmund Luis Mooney, Henry W. Mooney, S. Montgomery Pike, William G. Smith, and the corporation of St. Stephen's Church, restraining them from exercising, or attempting to exercise, any of the functions of the offices of church-warden and vestry-men of the church of St. Stephen, until the further order of this court. The judgment of ouster of June 21, 1890, left one vacancy in the office of warden and six vacancies in the offices of vestry-men. The relators Fleming, Watson, and Shroeder were left in office,—the first-named as warden, and the other two as vestry-men. They took immediate steps to provide for the filling of the vacancies, and the defendant appeals from an order directing that a writ of *mandamus* issue requiring him to join with them in holding a special election to supply said vacancies. For former reports, see 10 N. Y. Supp. 125, and 11 N. Y. Supp. 669, 670, 671, 673, 674, and 675.

Argued before DALY, C. J., and BISCHOFF, Jr., and PRYOR, JJ.

*Andrew J. Shipman,* (*Wager Swayne* and *Charles Blandy,* of counsel,) for appellant. *Booraem, Hamilton & Beckett,* (*Daniel G. Rollins, David Bennett King,* and *Wm. H. Hamilton,* of counsel,) for respondents.

DALY, C. J   This is an appeal by the defendant, A. Bloomer Hart, rector of the Protestant Episcopal Church of St. Stephen in the city of New York, from an order of the special term of this court, made upon the petition of Charles E. Fleming, church-warden, and William F. Watson and Charles Shroeder, vestry-men, corporators and trustees of said church, directing that a writ of *mandamus* issue to the said rector, requiring him to join with the said relators in holding a special election to supply vacancies in the vestry of said church, caused by the ousting from office of Stephen R. Weeks as church-warden, and Thomas F. Cock, Edwin K. Linen, S. Montgomery Pike, Edmund Luis Mooney, Henry W. Mooney, and William G. Smith, as vestry-men of said church, by a judgment of this court in an action in the nature of

*quo warranto,* brought on behalf of the people of the state by the attorney general. 11 N. Y. Supp. 673. The order for the *mandamus* appointed a time and place for the holding of such election, and directed that it should be held under the supervision of a referee named by the court. From the whole of the order and the writ of *mandamus* issued in conformity therewith the defendant, as rector of said church, appeals. It appears that a regular election for church-wardens and vestry-men was held in the said church at Easter, 1890, and the defendant, who presided as rector, announced and certified in the usual course that the last-named persons, together with these relators, were duly elected,—Weeks and Fleming, church-wardens; and Cock, Linen, Pike, E. L. Mooney, H. W. Mooney, Smith, Watson, and Shroeder, vestry-men. There had been much dissension in the corporation before this election was held, growing out of the action of the former vestry at a special meeting in February, 1890, in voting to consolidate the church with the Protestant Episcopal Church of the Holy Trinity in the same city; and the rector had refused to give notice of an Easter election in 1890 in view of said vote and the agreement of consolidation entered into in pursuance thereof; but a *mandamus* to him having been issued by the supreme court (11 N. Y. Supp. 670) requiring a notice of the election to be given and the election to be held, he obeyed the writ, and held the election, at which he presided, and the result of which he declared as above mentioned. Subsequently the action of the attorney referred to was instituted, which resulted in ousting Weeks as churchwarden, and all the vestry-men except Watson and Shroeder. Among the officers so ousted were five members of the former vestry, who were in office as vestry-men at the time of the said election, viz., Weeks, Cock, Linen, Pike, and E. L. Mooney, and they, deeming that the judgment which ousted them established the invalidity of that election, and there were no successors to the former vestry chosen thereat, claimed to hold over under the statute; and upon their relation the attorney general commenced an action in the supreme court against these relators as defendants, together with the remaining members of the former vestry not joined as relators. The complaint in that action set forth the election of church-wardens and vestry-men at the annual election of 1889, and claimed that no person had at any time since been chosen or elected in their stead, and that these relators, Fleming, Watson, and Shroeder, wrongfully claimed and asserted that they had been elected at the election of 1890, and were usurping the offices of church-warden and vestry-men, and demanded judgment ousting them from such office, and adjudging the former vestry entitled to the offices by virtue of the election of May, 1889. That action was tried, and resulted in a judgment in favor of these relators, Fleming, Watson, and Shroeder, dismissing the complaint upon the merits. Such judgment was rendered after the making of the order now appealed from, but the action was commenced while the application of these relators for this *mandamus* was pending.

The judgments established, as between the relators here who were elected in 1890, and all other persons claiming to have been elected with them at such election, or claiming to hold over for want of a valid election in 1890: (1) That these relators are lawfully in office pursuant to said election, and lawfully exercising the powers of trustees of said church; (2) that the other persons claiming to have been elected at the time have no title to office as church-warden or vestry-men; (3) that the former vestry, elected in 1889, does not hold over, and that these relators were chosen in their stead. The judgments are not, in one sense, conclusive upon the defendant here, the rector of the church, because he was not a party to the actions in which they were rendered, and could not properly be made a party thereto, such actions being brought to try the title of the claimants who were made defendants therein; but, inasmuch as the only way in which the title of rival claimants to said offices could be determined was in such action, the judgment therein is con-

clusive upon all other persons who do not claim the same office, but who might urge a doubt or question as to the title of such claimants where such doubt or question would affect the relief demanded against them in any collateral proceedings to which they and such claimants were parties. Such doubt or question is raised in this proceeding for a *mandamus* against the rector on the relation of these trustees for the holding of the special election. He objects that there is doubt of their title, and claims that to be a sufficient defense to the application for a *mandamus*. *People* v. *Stevens*, 5 Hill, 616. But, if the title of the relators has been established in a direct proceeding to test it, brought by rival claimants, or against them, the objection is answered, and the judgment in such proceeding is conclusive until reversed. This is the present case, and the adjudications which the relators invoke must not only dispose of the defense that there are rival claimants to the office, but necessarily answer all objections assailing the title of the relators to the office of trustees of the church, and that any other person or persons whomsoever have any right to such offices, or to exercise the powers of church-warden and vestry-men, as holding over or otherwise; and, finally, must dispose of the objection that no vacancy now exists to be filled by a special election; for the contention of the defendant is that there is no vacancy; that there was a failure to elect any trustees at the election of 1890, or a failure to choose a sufficient number to transact business, which, it is claimed, amounts to the same thing as a failure to elect any, (*In re Union Ins. Co.*, 22 Wend. 591;) and that, therefore, the former vestry holds over, and all the offices are filled, (Laws 1813, c. 60, § 1; Laws 1844, c. 158.) The contention being that there is no vacancy because the old, board holds over, a judgment against the members of the old board that they do not hold over establishes that a vacancy exists; and the number of vacancies is fixed by the one judgment which ousts seven of the trustees, and by the other judgment confirming the right of the three remaining trustees to hold the office. But if there were no such conclusive adjudications as to title between the rival claimants to the office it would seem clear that a vacancy was created when the seven persons elected in 1890 were subsequently ousted from office. There was an election regularly held at the church at Easter, 1890, and two church-wardens and eight vestry-men were duly declared and certified elected. There was, therefore, a *de facto* board, competent to discharge the duties of trustees. All the offices were filled by successors chosen in the stead of the former vestry-men, and the latter could not hold over. Were it not for the judgment in *quo warranto*, all the members of the new board would have continued to serve, and the offices would have been filled. That judgment ousted certain of the persons declared so elected, but not all; and there were left remaining *de facto* trustees in office, with vacancies created by the judgment, and not existing before it. The case differs from *In re Union Insurance Co.*, 22 Wend. 591, where it was suggested that if less than the number of trustees competent to convene as a board and transact business had been chosen "it might be that the whole election would have been void, as there would not have been a sufficient number of the directors chosen to constitute a board," because in this case a full board had been voted for by the church and declared elected, and a majority had afterwards been displaced. The vacancies caused by such displacement must be filled by a new election the same as if such vacancies had been caused by the resignation or death of a majority of the board. This is substantially the view taken by the supreme court in affirming the judgment above referred to. *People* v. *Fleming, ante*, 715, (March 13, 1891.) This last consideration disposes of all that is argued against the power of the three remaining trustees to appoint a time for holding a special election to fill the vacancies,—whether such objections are based upon the want of power to convene as a board, there not being a quorum, (a majority of the whole number of vestry-men, viz., five, being required to transact business,) or upon the informality of the pro-

ceedings of the three trustees in calling such election and requesting the rector to unite with them. If a majority of the trustees had resigned or died, the minority would be bound to proceed forthwith, and call a special election to fill their places, for the law will not tolerate inaction or delay in that respect, which virtually suspends the functions of the corporation, and embarrasses it and all persons dealing with it. If the trustees, because too few in number, cannot convene as a board, nor hold a meeting, then they must unite as individuals to perform the duties devolving upon them. It is as "trustees," and not as a "board," they are to call such an election. Act 1813, c. 60, § 1. It is conceded by the defendant that the relators Fleming and Watson called upon him personally, and requested him to unite with them in signing a resolution appointing a time for holding a special election to fill the existing vacancies, and that he refused, restating certain reasons he had given in the vestry-room the evening before, at the time appointed for a meeting in a notice from the trustees, which had been previously served upon him. These reasons were: (1) That the relators had no legal standing as a vestry; (2) the notice or call for a meeting was not sufficient; (3) that there was not a quorum present; (4) that the vestry had not power to call such a special election as was mentioned in the notice or call for a meeting. Those objections went to the power of the remaining trustees to take any action whatever to fill vacancies, and not to the time appointed for the meeting or for the election, or to any matter of propriety or convenience as to which his wishes should be regarded, or his discretion exercised. It was a refusal which left the trustees no recourse except a resort to their remedy by *mandamus,* which they have taken  The objection that the relator Shroeder did not make the request of the rector is not good, as he joins as relator in this proceeding.

There remains to be considered but one question,—the appointment of a referee to supervise and superintend the election, "and see that said election is fairly held and conducted in all respects in accordance with the law, with power to administer oaths to and examine persons offering to. vote at said election, and to adjourn the said election at any stage of the same to a time to be specified and announced by him, if in his discretion such adjournment shall be needful, expedient, and just; and that the said rector, if present at the said election, act in all things under the supervision and superintendence of said referee." Under ordinary circumstances, there could be no question that a rector should be left to preside over and conduct a special election; but the facts of this case are peculiar, and the court at a special term doubtless considered that in appointing the referee for the purpose aforesaid it was giving the rector, who was likely to be much more embarrassed between the orders of the court and a sense of duty which might interfere with the fullest compliance therewith, a relief which he would greatly appreciate. Certain trustees whom he declared elected at the last election were ousted because of his refusal to receive the votes of certain duly-qualified voters, and now, after the verdict of the jury and the judgment of the court that such votes should have been received, he solemnly states under oath in his answer to this application for a *mandamus:* "I received only those votes which I conscientiously believed and still believe should have been received, and refused to receive only the votes of those whom I conscientiously believed and still believe were not entitled to vote." The power of the court to appoint a referee to take charge of the election is undoubted. *McGuire* v. *Byrnes,* 2 N. Y. Supp. 760; *Kniskern* v. *Lutheran Churches,* 1 Sandf. Ch. 537, 561. The rector, as presiding and retiring officer, has only ministerial duties to perform, and so with the referee. McCrary, Elect. § 229; *People* v. *Canvassers,* 12 Abb. N. C. 77; *People* v. *Bell,* 7 N. Y. Supp. 701, and 8 N. Y. Supp. 254. The order and *mandamus* should be affirmed, with costs. All concur.